UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STARWOOD HOTELS & RESORTS WORLDWIDE, INC.,<br><br>         Plaintiff,<br><br>   - against -<br><br>HILTON HOTELS CORPORATION N/K/A HILTON WORLDWIDE, ROSS KLEIN AND AMAR LALVANI,<br><br>         Defendants. | No. 09 Civ. 3862 (SCR) |

**STARWOOD HOTELS & RESORTS WORLDWIDE, INC.'S RESPONSE TO THE GOVERNMENT'S APPLICATION FOR A STAY OF DISCOVERY**

Charles A. Gilman
David G. Januszewski
Andrea R. Butler
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Plaintiff Starwood Hotels & Resorts Worldwide, Inc.*

Plaintiff Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") is the victim of outrageous conduct and criminal activity by Defendants Hilton Hotels Corporation ("Hilton"), Ross Klein ("Klein"), Amar Lalvani ("Lalvani") and others. Starwood respects the Government's right and obligation to conduct its own investigation of Hilton's crimes, and welcomes its intervention into this action so that its voice may be directly heard. Starwood will also defer specific discovery requests that interfere with the Government's investigation. But Starwood respectfully requests that the Court deny the Government's application for a blanket stay of all discovery and instead direct the parties to fashion a more limited stay of particularized discovery so that the interests of the Government and the victim — Starwood — can both be protected.

After an eight month voluntary stay of all discovery, with the consent of all parties on December 17, 2009 the Court lifted the stay of discovery:

> "Well, on the application of the plaintiffs and the consent of all parties, I am going to vacate the stay in this matter . . . . I am lifting that so that the parties may begin in the formalized process of discovery here." (Exhibit A, 12/17/09 Transcript, at 10)

On January 15, 2010, Starwood served Defendants with (i) interrogatories tailored to identify knowledgeable witnesses, the location of documents, and any spoliation / non-compliance with the Court's Preliminary Injunction; and (ii) document requests tailored to the issues presented.

If Defendants are in compliance with the Court's Preliminary Injunction, there is no burden in their responding to basic first wave discovery requests because they were ordered ten months ago to gather up all the "improperly obtained" Starwood Information wherever located. Hilton has terminated the employment of Defendants Klein and Lalvani and others. Defendants already know who the knowledgeable witnesses are and where the relevant documents are located, but they have refused to answer any interrogatories and produce any documents.

-2-

After Defendants refused to provide any discovery, we sent each of their counsel an email asking simply with respect to his client: "Please confirm that to the best of your firm's knowledge [Defendant Hilton, Defendant Klein, Defendant Lalvani is] in compliance with the Preliminary Injunction." A week later, counsel for Defendants Hilton, Klein and Lalvani have still not answered what one would have thought, ten months after this Court's Injunction, should be an easy question.[1]

Prior to the filing of its application, the Government requested Starwood's consent to a complete stay of all discovery for an unlimited period of time. The Government did not suggest or propose any more limited stay. Starwood proposed that discovery in general would proceed but that Starwood would voluntarily stay for a reasonable period of time any identified aspect of discovery that caused the Government particularized concern. Starwood was willing, and remains willing, to agree to any compromise that will both protect the interest of the Government and allow Starwood as victim to pursue redress from Defendants.

The prevailing rule is to allow civil discovery to proceed, subject to the prosecutor's right to object to narrow and particular discovery requests that directly threaten the integrity of the criminal proceeding. *See, e.g., SEC v. Fraser*, 2009 WL 1531854, at *4 (D. Ariz. June 1, 2009) (denying government motion for blanket stay while noting: "The preferred course of action in these circumstances is for the Court to evaluate the Government's specific objections to discovery requests as they arise and, 'in lieu of a general stay, impose protective orders, seal in-

---

[1] At the same time that they refuse to provide any discovery, Defendants have written the Court stating that they intend to make a fact-based motion to dismiss involving, among other things, the citizenship of Defendant Lalvani. Any stay of discovery should not be so broad as to prevent the full development of an appropriate record for the determination of any motions that Defendants file.

-3-

terrogatories, impose a stay for a finite period of time, or limit a stay to a particular subject matter,' if such remedies are warranted."); *SEC v. Cioffi*, 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008) (Block, J.) (denying government motion for blanket stay while noting: "The far more sensible approach is to allow discovery to go forward, but to allow the U.S. Attorney to object to particular requests."); *SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005) (Rakoff, J.) (denying government's request for general stay but postponing individual civil depositions until after resolution of criminal trial); *SEC v. Doody*, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) (Kaplan, J.) (criticizing government's request for a blanket stay order as leaving the court "guessing as to just what protection the government legitimately requires"); *In re Scrap Metal Antitrust Litig.*, 2002 WL 31988168, at *7 (N.D. Ohio Nov. 7, 2002) (denying government motion for blanket stay while noting: "The Court believes, however, that it can take measures other than imposing a complete stay of discovery that would minimize the Government's concerns while, at the same time, allowing discovery to proceed."); *SEC v. Oakford*, 181 F.R.D. 269, 272 (S.D.N.Y. 1998) (Rakoff, J.) ("To the extent that [discovery] demands threaten the integrity of the criminal case . . . they are . . . subject to being narrowed or quashed upon an appropriate showing by the United States Attorney."); *see also In re WorldCom, Inc. Sec. Litig.*, 2002 WL 31729501, at *4 (S.D.N.Y. 2002) (Cote, J.) (granting narrow request for stay by the United States Attorney).[2]

---

[2] At pages 6-8 of its memorandum, the Government relies on older cases that applied a more lenient standard than is currently applied. As counsel for Defendant Lalvani writes in the 2009 edition of his treatise: "Courts are unlikely to grant a stay where a defendant has not been indicted but is only under criminal investigation, because the harm to the defendant is too remote, and the delay of the civil proceedings too long and unpredictable." M. Silberberg, E. Spiro & J. Mogul, *Civil Practice in the Southern District of New York*, § 24:5 (2009) (footnote and citations omitted); *see also* E. Spiro, *To Stay or Not to Stay*, NYLJ, Oct. 5, 2005, *available at* http://www.maglaw.com/publications/data/00090/_res/id=sa_File1/07010050006Morvillo.pdf (same).

-4-

The Government's request fails to take into account the unusual circumstances of this case. First, Defendant Hilton has already effectively confessed that the alleged misconduct has in fact occurred. This Court's Preliminary Injunction dated April 23, 2009 required Defendants to return to Starwood documents and electronic information "improperly obtained from Starwood." Pursuant to that Court order, Hilton has returned to Starwood hundreds of thousands of pages of materials, thereby conceding that that astonishing volume of material was "improperly obtained" from Starwood. At the December 17 conference before the Court, counsel for Hilton said he would not "quibble" about these facts and confirmed that "We have produced, undoubtedly, a significant quantity of documents." (Exhibit A, 12/17/09 Transcript, at 8-9). In response to a direct question from the Court, Hilton confirmed that the volume of returned information "is in the hundred thousand range." (*Id.* at 9). Many of the most egregious facts alleged in the Amended and Supplemental Complaint are simply indisputable. For example, the "improperly obtained" documents that Hilton itself produced pursuant to the Preliminary Injunction demonstrate that: (1) Hilton possessed hundreds of thousands of pages of improperly obtained confidential documents and electronic information from Starwood; (2) Hilton used corporate spies within Starwood to gain unauthorized access to Starwood's computer systems and confidential Starwood information; (3) at least 44 members of Hilton's management — five of whom sit on Hilton's ten-member Executive Committee — are identified on the documents as having sent, received or been copied on correspondence transmitting Starwood materials within Hilton, or were personally aware of Hilton's possession and use of it; (4) confidential Starwood information was uploaded onto a Hilton shared server; (5) Hilton "scrubbed" Starwood identifiers and "Hiltonized" Starwood materials to cover-up its wrongdoing; and (6) confidential Starwood in-

-5-

formation was routed around the globe and used by all of Hilton's luxury and lifestyle brands, including Hilton's Waldorf-Astoria Collection, Prestige Portfolio and Conrad Hotels brand.

Second, the Government does not and cannot assert that the existence of its investigation raises any issues of confidentiality or sensitivity. On April 21, 2009, Hilton itself issued a press release announcing to the world its receipt of a grand jury subpoena. The investigation has been the subject of extensive press coverage, not only in New York but around the world.[3]

Starwood will be substantially prejudiced if a stay of all discovery is granted. After inducing the unauthorized ransacking of Starwood's confidential computer files and theft of confidential and proprietary information and then being caught red-handed, Hilton has been firing people left and right. These witnesses will scatter. Documents will disappear and memories will fade. Defendants refuse to represent that they are in compliance with the Court's Preliminary Injunction and that evidence has not been destroyed. There is no reason Starwood should be prevented from pursuing discovery now, to preserve the factual record for a summary judgment motion or trial.[4]

The Government compares this case to *SEC v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005), stating: "'there is a high likelihood that invocations of the Fifth Amendment privilege will

---

[3] *See, e.g.*, Dominic Walsh, *Hilton Faces Criminal Corporate Spying Charges*, N.Y. Times, Oct. 8, 2009, *available at* http://business.timesonline.co.uk/tol/business/industry_sectors/leisure/article6865209.ece; Roger Blitz, *Subpoena for Hilton Hotels*, Fin. Times, Apr. 22, 2009, *available at* http://www.ft.com/cms/s/0/2829eb28-2ed7-11de-b7d3-00144feabdc0.html?nclick_check=1; Barbara De Lollis, *Grand Jury Seeks Hilton Papers In Case Alleging Spying On Starwood*, USA Today, Apr. 21, 2009, *available at* http://www.usatoday.com/travel/hotels/2009-04-21-starwood-hilton-spying_N.htm.

[4] The Government's request for a stay of all discovery for six months could easily turn out to be a stay of this case for years because a Government charging decision would likely bring criminal trials, convictions and appeals that could take years during which extensions of the stay would be requested.

-6-

play havoc with the orderly conduct of all . . . of these depositions.'" (Government Mem. at 3-4 (quoting *Saad*, 229 F.R.D. at 91)). But in *Saad*, Judge Rakoff explicitly "denied the motion of the U.S. Attorney's Office seeking a general stay of discovery in the SEC case" (*Id.* at 91), and opted instead to postpone certain party depositions while allowing document discovery and non-party depositions to proceed. "[T]here is no reason why full document discovery, as well as depositions of the non-parties, cannot proceed at this time, enabling the Court to have the civil case ready for trial within a few weeks after completion of the criminal case." *Id.* at 92.

Below we address in order each of the concerns raised at pages 8-13 of the Government's memorandum, and demonstrate that the drastic remedy of a blanket stay of all discovery is unnecessary. There is a better way, that protects both the Government and the victim.

1. Starwood is sensitive to the Government's concerns and to the extent that any specific discovery requests "seek to determine the types of presentations and arguments made to the United States Attorney's Office as well as the categories of documents sought by the Government in connection with its investigation" (Government Mem. at 8-9), at the Government's request Starwood would be willing voluntarily to defer Defendants' responses to those specific identified requests to a later date.

2. Similarly, to the extent that any specific depositions could potentially impair the Government's "ability to obtain full and complete information from certain witnesses who are essential to our investigation" (Government Mem. at 10), at the Government's request Starwood would be willing voluntarily to defer specific identified depositions to a later date.

3. To the extent that the Government is concerned that discovery "would likely make available to any potential criminal defendants information that lies well beyond the

-7-

narrow scope of criminal discovery" (Government Mem. at 10), the concern is premature. None of the Defendants has served any discovery requests in the civil action. Now that it has intervened, the Government will have notice of all further proceedings and can be heard at the appropriate time.

4. To the extent that the Government is concerned about "potential efforts by criminal defendants to manufacture evidence and tailor their testimony and defenses" (Government Mem. at 11), we share that concern — especially given Defendants refusals to represent their compliance with the existing Preliminary Injunction. That is why Starwood as victim must be permitted to conduct as much discovery as can be permitted consistent with the Government's work.

5. To the extent that the Government fears that "depositions and interrogatories could impair the usefulness of any witnesses whom the Government expects to call at any criminal trials" (Government Mem. at 11), specific interrogatory answers can be sealed or deferred and at the Government's request Starwood would be willing voluntarily to defer specific identified depositions to a later date.

6. Delaying the prosecution of Starwood's case under the excuse that allowing the criminal cases "to proceed ahead of the civil actions likely will result in a narrowing of the factual and legal issues before this Court" (Government Mem. at 12), is bad policy because "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001) (Lynch, J.). Preparation for a criminal and civil trial based on the same facts does not put an undue burden on Defendants because the work involved is duplica-

-8-

tive. *See Paine, Webber, Jackson & Curtis, Inc.* v. *Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) (Weinfeld, J.).

### CONCLUSION

Starwood requests that the Court deny the Government's application for a blanket stay of all discovery and direct the parties to fashion a more limited stay of particularized discovery so that the interests of the Government and Hilton's victim Starwood are both protected.

Dated: February 22, 2010

Respectfully Submitted,

By: _____
Charles A. Gilman
David G. Januszewski
Andrea R. Butler
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: 212-701-3000

*Attorneys for Plaintiff Starwood Hotels & Resorts Worldwide, Inc.*