**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC.,

                                    *Plaintiff*,

                - *against* -

HILTON HOTELS CORPORATION N/K/A
HILTON WORLDWIDE, ROSS KLEIN AND
AMAR LALVANI,

                                    *Defendants*.

No.  09-cv-3862 (SCR) (ECF Case)

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

*Of Counsel*:    Aaron H. Marks, Esq.
            Leonard A. Feiwus, Esq
            Emilie B. Cooper, Esq.
            Kasowitz, Benson, Torres & Friedman LLP
            1633 Broadway
            New York, New York 10019
            Phone: (212) 506-1700
            Fax: (212) 506-1800

            *Attorneys for Defendant Hilton Hotels*
            *Corporation n/k/a/ Hilton Worldwide*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

I.      Factual Allegations Relevant To Starwood's CFAA Claim................................................4

II.     Lalvani's Citizenship...............................................................................6

ARGUMENT ..............................................................................................................7

I.      Starwood's CFAA Claim Should Be Dismissed
        Because It Fails As A Matter Of Law.............................................................8

        A.      Starwood Cannot Allege Unauthorized Access By Klein Or Lalvani
                To Its Computer System Or Its Electronic Materials................................................9

        B.      Starwood Cannot Allege Unauthorized Access By Hilton
                To Its Computer System Or Its Electronic Materials...........................................14

        C.      Starwood Has Failed To Allege Any "Damage Or Loss"................................. 17

II.     Diversity Jurisdiction Does Not Exist Because
        Starwood And Lalvani Are Both New York Citizens.................................................... 20

III.    The Court Should Compel Claims Relating To
        Klein's Separation Agreement To Arbitration................................................24

CONCLUSION........................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Family Mut. Ins. Co. v. Rickman*,
  554 F. Supp. 2d 766 (N.D. Ohio 2008)...............................................................8

*B & B Microscopes v. Armogida*,
  532 F. Supp. 2d 744 (W.D. Penn. 2007).............................................................10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................9

*Binary Semantics Ltd. v. Minitab, Inc.*,
  No. 4:07-CV-1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008),
  *vacated in part on other grounds*, 2008 WL 1981591 (M.D. Pa. May 1, 2008) ...................16

*Boston Safe Deposit and Trust Co. v. Morse*,
  779 F. Supp. 347 (S.D.N.Y. 1991) ...............................................................21, 23

*Brett Senior & Assocs., P.C. v. Fitzgerald*,
  No. 06-1412, 2007 WL 2043377 (E.D. Pa. July 13, 2007) ...............................10, 12

*Brignoli v. Balch, Hardy & Scheinman, Inc.*,
  696 F. Supp. 37 (S.D.N.Y. 1988) ...................................................................21

*Bro-Tech Corp. v. Thermax, Inc.*,
  651 F. Supp. 2d 378 (E.D. Penn. 2009) ............................................................11

*Burch v. Pioneer Credit Recovery, Inc.*,
  551 F.3d 122 (2d Cir. 2008)............................................................................9

*Butera & Andrews v. Int'l Bus. Machs. Corp.*,
  456 F. Supp. 2d 104 (D.D.C. 2006) ..................................................................16

*Calamia v. Riversoft Inc.*,
  No. 02-CV-1094, 2002 WL 31779991 (E.D.N.Y. Dec. 13, 2002)........................25

*Calence, LLC v. Dimenson Data Holdings*,
  No. C06-0262, 2007 WL 1549495 (W.D. Wash. May 24, 2007)...........................16

*Calyon v. Mizuho Securities USA, Inc.*,
  No. 07 Civ. 2241, 2007 WL 2618658 (S.D.N.Y. Sept. 5, 2007)...........................13

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988)..........................................................................................19

*Cassetica Software, Inc. v Computer Scis. Corp.*,
  No. 09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009) ................................17

*Cenveo v. Rao*,
659 F. Supp. 2d 312 (D. Conn. 2009)..............................................................13, 14

*Charles Schwab & Co., Inc. v. Carter*,
No. 04 C 7071, 2005 WL 236815 (N.D. Ill. Sept. 27, 2005)....................................16

*Chas S. Winner, Inc. v. Polistina*,
No. 06-4865, 2007 WL 1652292 (D.N.J. June 4, 2007).........................................18

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*,
271 F.3d 403 (2d Cir. 2001)..................................................................................25

*Civic Center Motors, Ltd. v. Mason St. Import Cars, Ltd.*,
387 F. Supp. 2d 378 (S.D.N.Y. 2005)..........................................................17, 18, 19

*Cohen v. Gerson Lehrman Group, Inc.*,
2010 WL 92484 (S.D.N.Y. Jan. 7, 2010) .............................................................13

*Condux Int'l, Inc. v. Haugum*,
No. 08-4824, 2008 WL 5244818 (D. Minn. Dec. 15, 2008) ...............................10, 11

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*,
616 F. Supp. 2d 805 (N. D. Ill. 2009) ........................................................11, 17, 19

*Dental Health Prods., Inc. v. Ringo*,
No. 08-C-1039, 2009 WL 1076883 (E.D. Wis. Apr. 20, 2009) ...............................10

*Diamond Power Int'l, Inc. v. Davidson*,
540 F. Supp. 2d 1322 (N.D. Ga. 2007) ..............................................................9, 12

*Doe v. Dartmouth-Hitchcock Med. Ctr.*,
No. CIV. 00-100-M, 2001 WL 873063 (D.N.H. July 19, 2001) .............................15

*First Mortgage Corp. v. Baser*,
No. 07 C 6735, 2008 U.S. Dist. LEXIS 36885 (N.D. Ill. Apr. 30, 2008)................17

*Garland-Sash v. Lewis*,
No. 05 Civ. 6827, 2007 WL 935013 (S.D.N.Y. Mar. 26, 2007), *aff'd in part, vacated in part on other grounds*, 2009 WL 3227297 (2d Cir. Oct. 8, 2009) ................................ 15-16

*Goldstein v. Pataki*,
516 F.3d 50 (2d Cir. 2008)....................................................................................9

*Guest-Tek Interactive Entm't v. Pullen*,
No. 09-11164, 2009 WL 3403129 (D. Mass. Oct. 19, 2009) ..................................10

*Gutierrez v. Fox*,
141 F.3d 425 (2d Cir. 1998)..............................................................................20, 21

*Hanig v. Yorktown Cent. Sch. Dist.*,
   384 F. Supp. 2d 710 (S.D.N.Y. 2005)....................................................................20

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
   246 F.3d 219 (2d Cir. 2001)..........................................................................24

*Hendry v. Masonite Corp.*,
   455 F.2d 955 (5th Cir. 1972) ........................................................................22

*Int'l Airport Ctrs., L.L.C. v. Citrin*,
   440 F.3d 418 (7th Cir. 2006) ....................................................................10, 11

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*,
   390 F. Supp. 2d 479 (D. Md. 2005)......................................................8, 10, 12

*Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*,
   No. 08-CV-3980, 2009 WL 2524864 (E.D.N.Y. Aug. 14, 2009) ................................. *passim*

*JLM Indus. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)..........................................................................25

*Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   No. 03 Civ. 10333, 2006 WL 300477 (S.D.N.Y. Feb. 7, 2006) ..........................22

*Kluber Skahan & Assocs., Inc. v. Cordogan, Clark & Assoc., Inc.*,
   No. 08-cv-1529, 2009 WL 466812 (N.D. Ill. Feb. 25, 2009) ...................................8

*Liakakos v. Cigna Corp.*,
   704 F. Supp. 583 (E.D. Pa. 1988) ..................................................................22

*Linardos v. Fortuna*,
   157 F.3d 945 (2d Cir. 1998)......................................................................20, 21

*Lockheed Martin Corp. v. Speed*,
   No. 6:05-CV-1580-ORL-31, 2006 WL 2683058 (M.D. Fla. Aug. 1, 2006) ................9, 10, 12

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
   252 F.3d 218 (2d Cir. 2001)......................................................................24, 25

*Lundquist v. Precision Valley Aviation, Inc.*,
   946 F.2d 8 (1st Cir. 1991)..............................................................................23

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ...................................................................... *passim*

*Lynch v. Suffolk County Police Dep't, Inc.*,
   No. 07-3684-cv, 2009 WL 3287565 (2d Cir. Oct. 14, 2009) ..............................19

*Mehler v. Terminix Int'l Co. L.P.*,
   205 F.3d 44 (2d Cir. 2000)...................................................................................24

*Mitchell v. United States*,
   88 U.S. 350 (1874)...........................................................................................20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).............................................................................................24

*Nat'l Artists Mgmt. Co. v. Weaving*,
   769 F. Supp. 1224 (S.D.N.Y. 1991).....................................................................21

*NCMIC Fin. Corp. v. Artino*,
   638 F. Supp. 2d 1042 (S.D. Iowa 2009) .................................................................10

*Nexans Wires S.A. v. Sark-USA, Inc.*,
   166 F. App'x 559 (2d Cir. 2006),
   *aff'g*, 319 F. Supp. 2d 468 (S.D.N.Y 2004)..........................................13, 17, 18, 19

*Noreiga v. Lever Bros. Co., Inc.*,
   671 F. Supp. 991 (S.D.N.Y. 1987) ......................................................................23

*Palazzo v. Corio*,
   232 F.3d 38 (2d Cir. 2000)...............................................................................20

*Paramedics Electromedicina Comercial, LTDA v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004)...............................................................................24

*Pasquantino v. United States*,
   544 U.S. 349 (2005)........................................................................................12

*Peregrine Myanmar Ltd. v. Segal*,
   No. 95 Civ. 8286, 1995 WL 723359 (S.D.N.Y. Dec. 7, 1995)...................................22

*ReMedPar, Inc. v. AllParts Med., LLC*,
   No. 3:09-cv-00807, 2010 WL 55303 (M.D. Tenn. Jan. 4, 2010) ...............................15

*Reynolds v. Wohl*,
   332 F. Supp. 2d 653 (S.D.N.Y. 2004)..................................................................20

*Role Models Am., Inc. v. Jones*,
   305 F. Supp. 2d 564 (D. Md. Feb. 25, 2004).....................................................15, 16

*Ross v. American Express Co.*,
   547 F.3d 137 (2d Cir. 2008)...............................................................................25

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) .............................................................. *passim*

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*,
   119 F. Supp. 2d 1121 (W.D. Wash. 2000)..............................................................................10

*Strawbridge v. Curtiss*,
   7 U.S. 267 (1806)..........................................................................................................20

*TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*,
   No. 06-5359, 2009 WL 3234226 (D.N.J. Sept. 30, 2009).....................................................18

*US Bioservices Corp. v. Lugo*,
   595 F. Supp. 2d 1189 (D. Kan. 2009)..............................................................................10, 11

*Webb v. Banquer*,
   19 F. Supp. 2d 649 (S.D. Miss. 1998)..............................................................................22

*Willis v. Westin Hotel Co.*,
   651 F. Supp. 598 (S.D.N.Y. 1986)..................................................................................21

## RULES AND STATUTES

18 U.S.C. § 1030(a)(2)(C) ...............................................................................................8, 16

18 U.S.C. § 1030(a)(4) .....................................................................................................8, 16

18 U.S.C. § 1030(a)(5)(C) ...............................................................................................8, 16

18 U.S.C. § 1030(e)(8) .........................................................................................................17

18 U.S.C. § 1030(e)(11) .......................................................................................................17

18 U.S.C. § 1030(g) .....................................................................................................1, 9, 17

28 U.S.C. § 1332(a) ..............................................................................................................20

28 U.S.C. § 1367(c) ..............................................................................................................19

Fed. R. Civ. P. 12(b)(1).....................................................................................................1, 20

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 3, 9, 13, 20

## OTHER AUTHORITIES

13B C. Wright, A. Miller & E. Cooper,
   *Federal Practice and Procedure* § 3612 (2d ed. 1984)........................................................20

H.R. Rep. No. 98-894 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3689.......................................11

S. Rep. No. 99-432 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 2479 ............................................8

Defendants Hilton Hotels Corporation, n/k/a Hilton Worldwide ("Hilton"), Ross Klein ("Klein") and Amar Lalvani ("Lalvani," and collectively with Hilton and Klein, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the eleventh cause of action of the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), and to dismiss the entire action for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1).[1]

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint asserts federal question and diversity of citizenship as alternative grounds for subject matter jurisdiction. As shown below, neither provides a proper basis for this Court's jurisdiction. Federal question jurisdiction is unavailable because the sole federal cause of action, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g) (the "CFAA"), a statute enacted to address computer hacking, fails as a matter of law. Additionally, diversity of citizenship does not exist, as both Starwood and one of the defendants, Amar Lalvani, were New York citizens at the time the action was commenced. Without a viable federal cause of action or complete diversity, no federal subject matter jurisdiction exists, and this Court should dismiss the action in its entirety. Alternatively, if this Court retains jurisdiction over the case, the Court should compel claims relating to Klein's separation agreement with Starwood to arbitration.

This action concerns the alleged taking of confidential and trade secret information by Klein and Lalvani, former Starwood employees, who left Starwood in 2008 to join one of its key competitors, Hilton. Plaintiff contends that Klein and Lalvani, and others who reported to them, left the company and stole hundreds of thousands of Starwood documents for Hilton's purported

---

[1]    Submitted herewith is the declaration of Aaron H. Marks, dated February 26, 2010, and the affidavit of Amar Lalvani, sworn to on February 25, 2010 ("Lalvani Aff."). The Amended Complaint ("Am. Compl.") by Starwood Hotels & Resorts Worldwide, Inc. ("Plaintiff" or "Starwood") is attached as Exhibit 1 to the Marks Declaration.

benefit.  Starwood asserts ten state law causes of action arising from these facts, including breach of employment contracts, misappropriation of trade secrets, tortious interference and unfair competition, against Hilton, Klein and Lalvani.

In a plain effort to federalize this state law dispute and manufacture grounds for this Court's jurisdiction, Starwood has included one putative federal claim, a private right of action under the CFAA, as its eleventh and last cause of action.  Starwood's attempt to invoke federal jurisdiction on this basis, however, fails because the allegations of corporate espionage, defecting employees and stolen trade secrets, even if true (which they are not), do not state a viable CFAA claim.  The CFAA was enacted by Congress to prevent and criminalize computer hacking and other unauthorized access, not trade secret theft or state law employment disputes, even if such matters involve (as most do) electronically maintained materials.

To state a CFAA claim, Starwood must allege unauthorized access – that Defendants accessed its computers "without authorization" or in "excess of authorized access."  Although Starwood contends that its electronic materials were stolen, it has not alleged – and cannot allege – facts sufficient to show unauthorized access.  Defendants Klein and Lalvani were fully authorized to access Starwood's computers and electronic information.  Starwood's allegations of improper motive, or improper use of the accessed electronic information, are insufficient to demonstrate *unauthorized access* under the CFAA.  Nor can Starwood state a CFAA claim against Hilton because there are no factual allegations that Hilton personnel accessed a Starwood computer, a prerequisite under the statute.  Starwood's CFAA claim also fails because Starwood cannot demonstrate "damage or loss" as required by the statute.

Starwood has also attempted to ground this Court's subject matter jurisdiction on purported diversity of citizenship.  However, complete diversity does not exist, as plaintiff

Starwood and defendant Lalvani were both New York citizens at the time the action was commenced. Prior to taking the job at Hilton, Lalvani lived in, and was a citizen of, New York. When Lalvani moved to California to work at Hilton in 2008, his move was temporary. Even after he joined Hilton, he never abandoned his New York citizenship, and continued to maintain his New York apartment as his permanent residence. Lalvani had no intent to remain in California indefinitely, and his rental apartment in California was a temporary accommodation. As Starwood and Lalvani were citizens of New York when Starwood filed this action, there can be no subject matter jurisdiction premised on diversity.

To the extent that the Court retains jurisdiction over the case, Defendants move to compel claims relating to Klein's separation agreement to arbitration, pursuant to the terms of that agreement.

## STATEMENT OF FACTS

Starwood filed the instant action on April 16, 2009. On April 23, 2009, the Court entered a Preliminary Injunction and Order on consent, and the action was stayed until December 17, 2009. On January 14, 2010, Starwood served the instant Amended Complaint.[2]

Hilton and Starwood are direct competitors in the hotel and resort industry, and both companies are hotel operators and franchisors around the world. (Am. Compl. ¶¶ 1-3, 142.) In 2008, Klein and Lalvani were executive officers at Starwood working on its luxury hotel brands. (*Id.* ¶¶ 7, 146-47.) In connection with their positions, Klein and Lalvani both "had access to the most confidential and competitively sensitive Starwood luxury and lifestyle brands information." (*Id.* ¶¶ 146-47.) Both Klein and Lalvani had also signed employment agreements with Starwood, including a "Non-Solicitation, Confidentiality and Intellectual Property Agreement." (*Id.*) In

---

[2]     With the exception of certain facts relating to Lalvani's citizenship, the facts set forth in the Amended Complaint are presumed to be true for purposes of this motion only, as required by FRCP 12(b)(6).

late spring 2008, Klein and Lalvani left Starwood to assume positions at Hilton.  On May 30,

2008, Klein signed a separation agreement with Starwood (*id.* ¶ 166), and became Global Head

of Hilton's Luxury & Lifestyle Brands.  (*Id.* ¶ 91.)  Klein's separation agreement included an

arbitration clause which provides, in pertinent part, that "[a]ny controversy, dispute or claim

arising out of or related to this Agreement or its enforceability shall be finally settled by final and

binding arbitration."  (*Id.* at Ex. 3, ¶ 11.)  Lalvani left Starwood in June 2008, and became Global

Head of Luxury & Lifestyle Brand Development at Hilton.  (Am. Compl. ¶ 180.)

    Starwood alleges that Klein and Lalvani stole hundreds of thousands of documents

containing confidential Starwood information for use in their new positions at Hilton.  (*See, e.g.*,

*id.* ¶¶ 9, 15, 33, 111, 158-59, 161, 163, 173-75, 181, 196.)  Starwood further alleges that

Defendants "engaged in corporate espionage," Hilton's "management personally induced and

used Starwood employees to serve as corporate spies within Starwood" (*id.* ¶¶ 15-16, 42, 44,

136, 174-175, 178, 213, 285), and Hilton is responsible for the wrongful acts of Klein, Lalvani

and the others allegedly conspiring with them.  (*Id.* ¶¶ 77, 101, 109, 285.)

## I.    Factual Allegations Relevant To Starwood's CFAA Claim

    For its eleventh cause of action, Starwood asserts a claim under the CFAA.  (*Id.* ¶¶ 280-

88.)  Starwood alleges that confidential materials "are maintained on secure servers and hard

drives, for which access is limited to particular groups of employees within the company."  (*Id.*

¶ 154.)  Starwood also states that certain information on its system was password-protected.  (*Id.*)

    In conclusory terms, Starwood contends that its computer systems were accessed either

"without authorization" or in "excess of authorized access."  (*Id.* ¶¶ 282-83, 286.)  Specifically,

Starwood alleges that, while he was still employed at Starwood, "Lalvani secretly downloaded

files containing Starwood Confidential Information to a personal USB drive and forwarded

Starwood Confidential Information to his personal e-mail address." (*Id.* ¶ 181; *see also id.* ¶¶ 44-45, 137, 174-75.) After he joined Hilton, Lalvani allegedly "contacted Starwood employee Christopher Kochuba (whom he later recruited to Hilton) and asked Kochuba to send him 'all of [Starwood's] process maps, critical path, programs, designer lists, and other materials.'" (*Id.* ¶ 46.)[3]

Similarly, while employed by Starwood, Klein purportedly "gather[ed] up large volumes of Starwood Confidential Information that he took home, had loaded on a personal laptop computer and/or forwarded to a personal e-mail account and that he then took to Hilton." (*Id.* ¶¶ 41, 162-66.) Klein also allegedly "asked his personal assistant and others . . . to undertake a massive (and expensive) project to digitally archive thousands of 'tear sheet' images . . . . [which were then] sent to his personal e-mail account . . . . " (*Id.* ¶ 161.) Once at Hilton, Klein allegedly "used Starwood employees as corporate spies to provide Hilton with even more Starwood Confidential Information concerning Starwood's ongoing business plans." (*Id.* ¶ 42.)

Starwood's factual allegations, however, do not state that Klein, Lalvani or any of the other Starwood employees lacked or exceeded authorization to access the Starwood computer systems or specific electronic information at issue. Nor does Starwood provide detail regarding how, when, or by whom its computer systems or its electronic information were accessed without authorization. There are no allegations that an employee of Hilton directly accessed a Starwood computer, or expressly directed another to do so. There are also no allegations that Klein or Lalvani themselves or any other former employee accessed a Starwood computer once they left Starwood.

Additionally, Starwood alleges no facts concerning damage or loss resulting from any unauthorized access to its computer systems, other than mere recitation of the generic elements

---

[3]    Kochuba, however, left Starwood in May 2008 (*id.* ¶ 94), prior to Lalvani's departure (*id.* ¶ 92).

required by the CFAA statute. (*See id.* ¶ 286-87.) Starwood alleges that "[t]he ongoing effort by Starwood to determine just what had been downloaded from Starwood's computer systems has taken considerable time and resources." (*Id.* ¶ 191.) There are no factual allegations that any Starwood files or information were deleted or altered, or that there was any interruption or damage to its computer system.

## II.    Lalvani's Citizenship

As set forth in Lalvani's accompanying affidavit filed in support of this motion, Lalvani established his domicile in the State of New York in October 2006, and was a citizen of New York on April 16, 2009, when Starwood commenced this action. (Lalvani Aff. ¶¶ 1, 5.)

In the fall of 2006, Starwood, Lalvani's employer at the time, promoted Lalvani to a position that required him to return to the company's home offices in New York from his then-current assignment in Brussels, Belgium. (*Id.* ¶¶ 4-5.) At that time, the Lalvanis decided to make New York their permanent home, investing virtually their entire life savings in the purchase of a condominium in New York City. (*Id.* ¶¶ 4, 6.) The location of the condominium was selected specifically for its proximity to the public school that they hoped their infant daughter would attend someday. (*Id.* ¶ 6) By October 2006, the Lalvanis had severed all ties to Brussels, shipped their furniture to New York City and were residing in New York with the intention to remain there indefinitely. (*Id.* ¶¶ 5-6.)

In the spring of 2008, Steven Goldman, Hilton's President of Global Real Estate and Development, recruited Lalvani for an executive position with Hilton, which Lalvani accepted in May 2008. (*Id.* ¶ 7.) Although Lalvani's term sheet specified that he would work out of the company's headquarters, located "at that time" in Beverly Hills, California, Lalvani knew when he accepted the position that his move to California would be temporary. (*Id.* ¶¶ 7-9; Ex. A.)

Specifically, prior to Lalvani's acceptance, Goldman told Lalvani that Hilton would be moving its headquarters from Beverly Hills in the near future, that the move to California would be temporary, that Goldman had not moved his family to California, and that Lalvani should not sell his home in New York.  (*Id.* ¶¶ 7-8.)  Further, Hilton agreed to cover the cost of Lalvani's rental expenses for twelve months, a longer than usual length of time for employees to find a permanent home.  (*Id.* ¶ 8.)  Therefore, when the Lalvanis temporarily relocated to California in June 2008, Lalvani knew that he would not be remaining there.  (*Id.* ¶ 9.)

Accordingly, Lalvani took no steps to plant roots in California.  The Lalvanis did not sell their New York City home, nor did they even take their furniture with them.  (*Id.* ¶¶ 9-10.) They did not establish new checking, savings or brokerage accounts in California, or terminate the cable contract or newspaper subscription for their New York City home.  (*Id.* ¶¶ 12-13.)  Lalvani maintained his ownership stake in a New York City business, as well as his membership with a New York City social club.  (*Id.* ¶ 11.)  Finally, after Lalvani's employment with Hilton ended, the Lalvanis returned to their New York home as soon as it was logistically feasible to do so. (*Id.* ¶ 23.)  In short, although Lalvani lived in California from June 2008 to June 2009, he never had any intention of remaining there indefinitely or permanently.

## **ARGUMENT**

The Amended Complaint should be dismissed with respect to all Defendants because (i) the sole federal cause of action, the CFAA claim, is insufficient as a matter of law; and (ii) there is no diversity because Starwood and Lalvani are both citizens of New York.  In the alternative, if the Court declines to dismiss the action for lack of jurisdiction, it should compel certain claims to arbitration.

## I.

## STARWOOD'S CFAA CLAIM SHOULD BE
## DISMISSED BECAUSE IT FAILS AS A MATTER OF LAW

"The CFAA was enacted in 1984 to enhance the government's ability to prosecute computer crimes." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009). The CFAA "was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality. . . ." *Id.* at 1130; *see also Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008) (the purpose of the CFAA "was to create a cause of action against computer hackers (e.g., electronic trespassers)"), *quoting Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 495-96 (D. Md. 2005), *citing* S. Rep. No. 99-432, at 4 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 2479, 2482 (the CFAA "is a consensus bill aimed at deterring and punishing certain 'high-tech' crimes"). The CFAA is essentially "a criminal statute focused on criminal conduct. The civil component is an afterthought." *Gast*, 535 F. Supp. 2d at 965-66. The "underlying concern of the Act [is] damage to data," and the CFAA "was not meant to cover the disloyal employee who walks off with confidential information." *Kluber Skahan & Assocs., Inc. v. Cordogan, Clark & Assoc., Inc.*, No. 08-cv-1529, 2009 WL 466812, at *8 (N.D. Ill. Feb. 25, 2009), *quoting Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 771 (N.D. Ohio 2008) (dismissing CFAA claim against departing employee who misappropriated employer's confidential information). Starwood's CFAA claim fails for two reasons.

*First*, because the statute was designed to target hackers and electronic trespassers, the CFAA requires a plaintiff to demonstrate, among other things, that a defendant accessed a protected computer "without authorization" or in "excess of authorized access." *See* §§ 1030(a)(2)(C), (a)(4) and (a)(5)(C). Starwood's allegations of improper motive, or improper

use of the accessed electronic information, are insufficient to meet this requirement. *Second*, Starwood does not allege facts sufficient to show that it suffered "damage or loss" as a result of any unauthorized access. *See* § 1030(g). Accordingly, Starwood's CFAA claim fails as a matter of law and should be dismissed pursuant to FRCP 12(b)(6).[4]

### A.    Starwood Cannot Allege Unauthorized Access By Klein Or Lalvani To Its Computer System Or Its Electronic Materials

Claims under the CFAA are subject to dismissal where, as here, the defendants were authorized to access the computer, documents or data in question, and the sole allegations concern the alleged misuse of confidential information. *See, e.g.*, *Brekka*, 581 F.3d at 1129 (no CFAA violation where departing employee was authorized to access plaintiff's computers and obtain particular documents); *Gast*, 535 F. Supp. 2d at 966 (same); *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, No. 08-CV-3980, 2009 WL 2524864, at *5-6 (E.D.N.Y. Aug. 14, 2009) (same). Employees or other persons authorized to access a plaintiff's computer system are not acting "without authorization," and are not "exceeding authorized access," if they are permitted to access the electronic information at issue. *See, e.g.*, *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1343 (N.D. Ga. 2007) (no CFAA claim where defendant was authorized to access computer system and "his level of authorized access included express permission (and password access) to obtain the specific information at issue); *Lockheed Martin Corp. v. Speed*, No. 6:05-CV-1580, 2006 WL 2683058, at *5 (M.D. Fla. Aug. 1, 2006) (no

---

[4]        To survive a motion to dismiss under FRCP 12(b)(6), Starwood's claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir. 2008), *quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Although the Court must accept the facts alleged in the Amended Complaint as true and must draw reasonable inferences in favor of the nonmoving party, Starwood must allege sufficient, competent facts necessary "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir. 2008). Accordingly, a motion to dismiss pursuant to Rule 12(b)(6) should be granted if the allegations in the Amended Complaint merely parrot the language of the applicable statute or cause of action, and do not "raise [the] right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *see also Goldstein,* 516 F.3d at 56, *quoting Twombly,* 550 U.S. at 555.

CFAA claim stated where departing employees were permitted electronic access as they "fit within the very group that Congress chose not to reach, *i.e.*, those with access authorization").

Most courts have interpreted the "without authorization" or in "excess of authorized access" requirements of the CFAA to refer to outsiders, such as computer hackers, or other persons who lack express permission or passwords to access a plaintiff's computer system or its data. *See, e.g.*, *Brekka*, 581 F.3d at 1129; *Gast*, 535 F. Supp. 2d at 966-67; *Jet One Group*, 2009 WL 2524864, at *5-6.[5] This line of authority firmly rejects the view that an otherwise authorized employee violates the CFAA simply because the employee's intention or purpose is to misuse the electronic information against the employer's interest.

Starwood implies that Klein and Lalvani acted without authorization because they accessed or downloaded confidential Starwood information for the benefit of Hilton, or for some other purpose at odds with Starwood. (*See, e.g.*, Am. Compl. ¶¶ 282-86.) Some courts have adopted a broader view of the "authorization" element, finding that access to a computer system by an otherwise authorized employee may become unauthorized, if the employee acts with intent to breach loyalty, or makes improper use of the obtained information. *See, e.g.*, *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006).[6] In *Citrin*, the court determined that an employee who deleted data, and then loaded a program onto a company laptop to prevent the recovery of the deleted files, violated the CFAA by "intentionally caus[ing] damage without

---

[5]    Courts have routinely dismissed CFAA claims against departing employees who were authorized to access their employer's computer systems and the information at issue. *See, e.g.*, *US Bioservices Corp. v. Lugo*, 595 F. Supp. 2d 1189, 1192-95 (D. Kan. 2009); *Condux Int'l, Inc. v. Haugum*, No. 08-4824, 2008 WL 5244818, at *4-6 (D. Minn. Dec. 15, 2008); *B & B Microscopes v. Armogida*, 532 F. Supp. 2d 744, 758 (W.D. Penn. 2007); *Diamond Power*, 540 F. Supp. 2d at 1343; *Brett Senior & Assocs., P.C. v. Fitzgerald*, No. 06-1412, 2007 WL 2043377, at *2-4 (E.D. Pa. July 13, 2007); *Lockheed*, 2006 WL 2683058, at *5-7; *see also Werner-Masuda*, 390 F. Supp. 2d at 495-99 (dismissing CFAA claim against secretary of local union who had authority to access confidential membership information that she used for the benefit of a rival union).

[6]    *See also Guest-Tek Interactive Entm't v. Pullen*, No. 09-11164, 2009 WL 3403129, at *2-4 (D. Mass. Oct. 19, 2009); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1056-59 (S.D. Iowa 2009); *Dental Health Prods., Inc. v. Ringo*, No. 08-C-1039, 2009 WL 1076883, at *7 (E.D. Wis. Apr. 20, 2009); *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000).

authorization, to a protected computer." *See id.* at 419-20 (recognizing the purpose of the CFAA was to combat "attacks by virus and worm writers, on the one hand, which come mainly from the outside, and attacks by disgruntled programmers who decide to trash the employer's data system on the way out"). In *dicta,* the Seventh Circuit went beyond the issue of deleted files, and interpreted the CFAA's authorization element using principles of agency law. *Id.* at 420-21. The court reasoned that authorized access to a company's computer system ends when an employee breaches the duty of loyalty to the employer. *Id.*[7]

The breach of loyalty analysis in *Citrin* and other similar cases is not the prevailing view,[8] and should not be followed by this Court. Relying on the plain meaning and legislative history of the statute, many courts have rejected *Citrin*'s extension of the statute to encompass misappropriation or misuse of electronic information by otherwise authorized persons. (*See* note 5, *supra*.) These courts have concluded that prohibited conduct under the CFAA is analogous to that of "breaking and entering" into a computer system, rather than torts arising from the mere use of a computer in the commission of the offense. *See Condux*, 2008 WL 5244818, at *5, *quoting* H.R. Rep. No. 98-894, at 20 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3689, 3706; *see also US Bioservices*, 595 F. Supp. 2d at 1194 ("the CFAA cannot be read to encompass (and criminalize) frauds that happen to involve the use of a computer someplace during the course of its commission").

---

[7]    *Citrin* is essentially irrelevant where, as here, there are no allegations that anyone deleted Starwood files or damaged Starwood's computer system.  "The CFAA should not be used to prosecute employees who are merely disloyal" and do not delete files or damage the computer system. *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 812-13 (N.D. Ill. 2009) (distinguishing *Citrin,* and dismissing CFAA claim against an employee who merely accessed data for improper purposes).

[8]    *See, e.g.*, *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 406-07 (E.D. Penn. 2009) (declining to follow *Citrin*'s disloyal employee approach because the narrow interpretation of authorization under the CFAA is the less "capacious" and more compelling approach); *Jet One*, 2009 WL 2524864, at *5 (rejecting the *Citrin* disloyal employee analysis and citing cases); *US Bioservices*, 595 F. Supp. at 1193 ("There is no basis to graft a portion of the Restatement or other agency law onto the statute."); *Condux*, 2008 WL 5244818, at *4 (the narrow approach "reflects a more correct interpretation of the meaning of the terms 'without authorization' and 'exceeds authorized access'").

The plain language of the CFAA prohibits only "'the unauthorized procurement or alteration of information, not its misuse or misappropriation.'"  *Gast*, 535 F. Supp. 2d at 965, *quoting Fitzgerald*, 2007 WL 2043377, at *3; *see also Brekka*, 581 F.3d 1133 (the statute does not on its face proscribe unauthorized *use* of electronic information, only unauthorized *access*); *Werner-Masuda*, 390 F. Supp. 2d at 499 (same); *Diamond Power*, 540 F. Supp. at 1343 (same). The legislative history of the CFAA further supports a narrow interpretation of the "authorization" element.  *See Gast*, 535 F. Supp. 2d at 965, *citing Werner-Masuda*, 390 F. Supp. 2d at 495-96.  The CFAA was not intended to create the federal equivalent of state trade secret protection laws.  *See Jet One*, 2009 WL 2524864, at *6 ("[T]he statute, read as a whole, strongly indicates that Congress' intent was to prohibit the act of accessing a computer without authorization – not misusing data that one had a lawful right to access.").

Moreover, because it is primarily a criminal statute, courts apply the rule of lenity to the interpretation of the CFAA.[9]  Applying that rule of construction, courts have declined to apply the CFAA to employees or otherwise authorized computer users who misuse or misappropriate electronic information.  *Id.*  ("It is simply not appropriate to 'expand' the CFAA in a manner not consistent with the statute's plain meaning, and, in so doing, transform what has always been a common law civil tort (*i.e.,* misappropriation of confidential information) into a federal criminal offense.").

Indeed, applying these principles, two recent federal district courts within the Second Circuit have dismissed CFAA claims where the employees were authorized by their employer to access the electronic information, but did so for improper purposes or use.  *See Jet One*, 2009

---

[9]    The rule of lenity instructs the Court to narrowly construe the statute to encompass only the specific conduct which Congress intended to criminalize.  *See Brekka*, 581 F.3d at 1134-35; *Lockheed*, 2006 WL 2683058, at *7, *citing Pasquantino v. United States*, 544 U.S. 349, 383 (2005) ("when confronted with two rational readings of a criminal statute, one harsher than the other," the rule of lenity requires a court "to choose the harsher only when Congress has spoken in clear and definite language.").

WL 2524864, at *5-6; *Cenveo v. Rao*, 659 F. Supp. 2d 312, 316 (D. Conn. Sept. 30, 2009).[10]  In

*Jet One*, the defendant was sued for violating the CFAA when he accessed his employer's

computer to obtain confidential information for a competitor.  On a FRCP 12(b)(6) motion for

failure to state a claim, the court dismissed the CFAA claim because the defendant was

employed and authorized to access the electronic data, even though his intent at the time of

access was to misappropriate information.  *Jet One*, 2009 WL 2524864, at *5-6 (rejecting "a

CFAA claim based on [the employee] misusing and misappropriating information that [he] was

freely given access to.").  Similarly, in *Cenveo*, the employer asserted a CFAA claim where the

employee had downloaded and e-mailed electronic information from the plaintiff's computer

system.  *See* 659 F. Supp. 2d at 314-15.  The court in *Cenveo* found that the plaintiff failed to

state a CFAA claim where the employee was authorized to access the "highly sensitive,

confidential information" at issue.  *Id.* at 316.  Starwood's allegations are not materially

different.[11]

     Starwood's CFAA claim fails because Klein and Lalvani were in fact authorized to

access Starwood's computers and any alleged confidential information.  (*See* Am. Compl.

¶¶ 146-47.)  Indeed, Starwood expressly admits that both Klein and Lalvani "*had access* to the

---

[10]      Although the Second Circuit has not directly addressed the meaning of "authorization" under the CFAA, it has interpreted the CFAA narrowly in the context of its "damage and loss" requirements, in accordance with the statute's legislative history and the rule of lenity.  *See Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 562-63 (2d Cir. 2006), *aff'g*, 319 F. Supp. 2d 468, 474-78 (S.D.N.Y 2004); *see also Jet One*, 2009 WL 2524864, at *6 (reasoning that the narrow definitions of "damage" and "loss" adopted by the Second Circuit in *Nexans* "are wholly consistent with a limited Congressional intent in passing the CFAA – prohibiting people from 'hacking' into someone else's computer system, an act which can corrupt 'the integrity or availability of data, a program, a system, or information' or lead to 'interruption of service'").

[11]      Another federal district court in the Southern District of New York, *Calyon v. Mizuho Securities USA, Inc.*, No. 07 Civ. 2241, 2007 WL 2618658, at *1 (S.D.N.Y. Sept. 5, 2007), recognized a split of authority on the interpretation of the "authorization" element, but did not adopt either view.  In that case, the court denied a motion to dismiss the CFAA claim pursuant to Rule 12(b)(6) because the complaint sufficiently raised fact questions regarding authorization.  *Id.*  Other federal district courts have similarly refused to dismiss CFAA claims on that basis.  *See, e.g.*, *Cohen v. Gerson Lehrman Group, Inc.*, 2010 WL 92484, at *6 (S.D.N.Y. Jan. 7, 2010).  Here, there is no allegation that Klein or Lalvani or any other person lacked authorization to access Starwood's highly confidential information while employed at Starwood.

most confidential and competitively sensitive Starwood luxury and lifestyle brands information." (*Id.*; emphasis added.) While Starwood generally states that certain materials were maintained on servers and hard drives "for which access is limited to particular groups of employees within the company" (*id.* ¶ 154), Starwood never alleges that Klein, Lalvani or anyone else were not within the group of employees with permitted access. The allegations that Klein and Lalvani e-mailed documents to their personal e-mail accounts, or had others do so (*see, e.g., id.* ¶¶ 41, 44-45, 137, 158, 181), likewise fail to state a claim, because Klein, Lalvani and other Starwood personnel were permitted to access the documents at issue. *See Brekka,* 581 F.3d at 1134-35 (e-mailing sensitive documents that are accessed with permission, even for an improper purpose, does not satisfy the CFAA); *Gast,* 535 F. Supp. 2d at 968 (no CFAA claim where defendant e-mailed himself materials that he was authorized to access and view); *Cenveo,* 659 F. Supp. 2d at 317 (transmitting electronic information via e-mail is not accessing a computer under the CFAA).[12]

Because Starwood does not, and cannot, allege that Klein, Lalvani or anyone else, accessed Starwood electronic information without authorization, or in excess of authorized access, the CFAA claim fails.

**B.    Starwood Cannot Allege Unauthorized Access By Hilton To Its Computer System Or Its Electronic Materials**

To support a CFAA claim against Hilton, Starwood alleges that the Defendants "engaged in corporate espionage," and Hilton's "management personally induced and used Starwood

---

[12]    Starwood's remaining allegations also fail. Starwood does not contend that any person acting at the direction of Klein or Lalvani accessed a Starwood computer without authorization. For example, while Starwood alleges that Klein asked his personal assistant to archive "tear sheet" images (Am. Compl. ¶ 161), there is no allegation that the assistant lacked authorization by Starwood to do so. Similarly, there is no allegation that Christopher Kochuba, the Starwood employee who purportedly supplied confidential Starwood information to Lalvani, accessed such information from a Starwood computer without authorization. (*Id.* ¶ 46.) Indeed, any suggestion that Lalvani engaged in unauthorized access through Kochuba is nonsensical, and should be rejected, as Starwood admits that Kochuba left Starwood in May 2008 (*id.* ¶ 94), and Lalvani was still employed at Starwood until June 2008 (*id.* ¶ 92).

employees to serve as corporate spies within Starwood." (Am. Compl. ¶¶ 15, 213.)  According to

Starwood, Klein and Lalvani acted "with inducement from and with the knowledge and

participation of Defendant Hilton and its executives, or for the benefit of Defendant Hilton . . . ."

(*Id.* ¶ 285.)  Executives at Hilton were allegedly aware of and condoned Klein and Lalvani's

actions, and allegedly received confidential Starwood information from them. (*See, e.g.*, *id.* ¶¶

38, 43-44, 49-50, 174-176, 178.)  Starwood further alleges that, once at Hilton, Klein used

Starwood employees as corporate spies to obtain more Starwood information.  (*Id.* ¶¶ 42, 46.)

On that basis, Starwood contends that Hilton is responsible for the wrongful acts of Klein,

Lalvani and the others allegedly conspiring with them.  (*Id.* ¶¶ 77, 101, 109, 285.)

Although these statements generally allege misappropriation, they are insufficient to state

a CFAA claim.  There are no allegations that Hilton personnel accessed Starwood's computer

systems or electronic information.  In the absence of allegations that Hilton employees

intentionally acted in violation of the statute, there is no proper CFAA claim stated against

Hilton.  *See, e.g.*, *ReMedPar, Inc. v. AllParts Med., LLC*, No. 3:09-cv-00807, 2010 WL 55303, at

*6 (M.D. Tenn. Jan. 4, 2010) (CFAA claim dismissed where there were no allegations that

defendant company accessed plaintiff's computers at all); *Role Models Am., Inc. v. Jones*, 305 F.

Supp. 2d 564, 568 (D. Md. 2004) (no CFAA violation alleged where plaintiff did not allege that

defendant accessed plaintiff's computers, "much less 'intentionally' or 'knowingly and with

intent to defraud.'"); *Doe v. Dartmouth-Hitchcock Med. Ctr.*, No. CIV. 00-100-M, 2001 WL

873063, at *5 (D.N.H. July 19, 2001) (the CFAA "creates only a limited private right of action

'against *the violator*'" who intentionally acts in contravention of the statute) (emphasis in

original); *Garland-Sash v. Lewis*, No. 05 Civ. 6827, 2007 WL 935013, at *4 (S.D.N.Y. Mar. 26,

2007) (same), *aff'd in part, vacated in part on other grounds*, 2009 WL 3227297 (2d Cir. Oct. 8, 2009).[13]

      Starwood also contends that Hilton should be vicariously liable for the alleged CFAA violations of Klein, Lalvani or others.  (Am. Compl. ¶¶ 77, 101, 109, 285.)  To the extent that the CFAA claim against Hilton is derivative of the claims against Klein or Lalvani, it fails for the same reason: there is no allegation that anyone accessed Starwood computers without authorization.  Moreover, vicarious liability is not extended under the CFAA unless there are specific allegations that an employer directed an employee or agent to access a computer in violation of the statute.  *See, e.g.*, *Garland-Sash*, 2007 WL 935013, at *4 (the CFAA "does not provide a cause of action against individuals who fail to supervise violators, fail to train them properly or conspire to cover up their misconduct"); *Butera & Andrews v. Int'l Bus. Machs. Corp.*, 456 F. Supp. 2d 104, 111-13 (D.D.C. 2006) (no vicarious liability under the CFAA where the allegations were insufficient to show that an employee committed a violation at the direction of the employer).[14]  There are no such allegations here.  While Starwood contends that Hilton induced Klein and Lalvani to act as "corporate spies," Starwood has not alleged that Hilton directed Klein, Lalvani or anyone else to access Starwood computers.  Starwood's contention that Hilton conspired to misappropriate trade secrets or engage in other wrongful conduct is not

---

[13]      The CFAA has been strictly construed to create liability for only the specific conduct expressly proscribed. Based on the plain language of the statute, Starwood's CFAA claim requires proof that a person *intentionally* accessed its computer system without authorization.  *See* §§ 1030(a)(2)(C), (a)(4) and (a)(5)(C) (requiring intentional access).

[14]      *See also Calence, LLC v. Dimenson Data Holdings*, No. C06-0262, 2007 WL 1549495 (W.D. Wash. May 24, 2007) (no vicarious liability under the CFAA without evidence that the corporate defendants directed the individuals to violate the statute); *Role Models*, 305 F. Supp. 2d 564 (same).  Cases finding vicarious liability against a company defendant require specific allegations that the company directed and controlled the individual to violate the statute, and thus are distinguishable from the allegations here.  *See Binary Semantics Ltd. v. Minitab, Inc.*, No. 4:07-CV-1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008), *vacated in part on other grounds*, 2008 WL 1981591 (M.D. Pa. May 1, 2008); *Charles Schwab & Co., Inc. v. Carter*, No. 04 C 7071, 2005 WL 2369815 (N.D. Ill. Sept. 27, 2005).

sufficient to allege that Hilton accessed Starwood computers in violation of the CFAA.

Accordingly, the CFAA claim fails as to Hilton.

### C.    Starwood Has Failed To Allege Any "Damage Or Loss"

No civil cause of action can be sustained under the CFAA without a showing of "damage or loss" as defined by the statute. *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 562-63 (2d Cir. 2006) (affirming dismissal of CFAA claim for failure to demonstrate damage or loss), *aff'g*, 319 F. Supp. 2d 468, 474-78 (S.D.N.Y. 2004); *Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (Robinson, J.) (same); *see also First Mortgage Corp. v. Baser*, No. 07 C 6735, 2008 U.S. Dist. LEXIS 36885, at *7-9 (N.D. Ill. Apr. 30, 2008).[15]

Damage and loss under the CFAA must be directly caused by computer impairment or damage. *Nexans*, 166 F. App'x at 562-63 (loss may only be satisfied under the statute if caused by computer impairment or computer damage); *Civic Ctr.*, 387 F. Supp. 2d at 382 ("'losses' under the CFAA are compensable only when they result from damage to, or the inoperability of, the accessed computer system"). Costs associated with investigating the misappropriation of trade secrets or other disloyal employee conduct, are not by themselves recoverable under the CFAA. *Nexans*, 166 F. App'x at 563; *see also Cassetica Software, Inc. v Computer Scis. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *4 (N.D. Ill. June 18, 2009), *citing Del Monte Fresh Produce*, 616 F. Supp. 2d at 811-12 (the CFAA only permits the recovery of costs incurred for

---

[15]    "Damage or loss" are jurisdictional requirements for a private civil CFAA action. § 1030(g). "Damage" is defined under the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information." § 1030(e)(8). "Loss" is defined as "any reasonable cost" to the victim of "responding to an offense, conducting a damage assessment, and restoring the data, program, system, or other information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service. . . ." § 1030(e)(11).

damage assessments related to the impairment of a computer or electronic data).[16]  Here,

Starwood can allege only that its electronic files were downloaded and copied by departing

employees who had authorized access at the time.

In *Nexans*, plaintiff brought claims of trade secret misappropriation and unfair

competition together with a claim under the CFAA.  166 F. App'x at 561.  The Second Circuit

upheld the dismissal of the CFAA claim because plaintiff could not satisfy the CFAA's "loss"

requirement as a matter of law.  *Id.* at 562-63.  The court rejected plaintiff's argument that lost

business revenue or expenses resulting from the theft of electronic data satisfied the loss

requirement, because it was unrelated to computer impairment or damage.  *Id.* at 562.  The

Second Circuit further rejected plaintiff's allegations that an $8,000 expense to send executives

to investigate the misappropriation of its electronically stored data satisfied the specific

provisions of loss under the CFAA.  *Id.* at 563.

Applying that same reasoning, this Court similarly dismissed a claim for failing to state

loss under the CFAA.  *Civic Ctr.*, 387 F. Supp. 2d at 382.  In *Civic Center*, plaintiffs asserted lost

profits resulting from "the development and compilation of [computer] database information,"

but failed to allege losses resulting from "data corruption, the cost of responding to and repairing

the computer problems" or any other loss caused by computer impairment or computer damage.

*Id.*  This Court dismissed the CFAA claim, holding:

> Cases in this jurisdiction have found <u>"losses" under the CFAA are compensable</u>
> <u>only when they result from damage to, or the inoperability of, the accessed</u>
> <u>computer system.</u> *See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468,
> 474 (S.D.N.Y. 2004); *see also Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d
> 238, 252 (S.D.N.Y. 2000).  In *Nexans,* Judge Cedarbaum thoroughly examined

---

[16]    *See also TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*, No. 06-5359, 2009 WL 3234226, at *2 (D.N.J. Sept. 30, 2009), *quoting Chas S. Winner, Inc. v. Polistina*, No. 06-4865, 2007 WL 1652292, at *4 (D.N.J. June 4, 2009) (computer costs related to gathering evidence from a computer for litigation purposes "does not turn defendants' conduct – even disloyal conduct in breach of contract – into the kind of conduct that so concerned Congress that it criminalized it").

> the legislative history of the CFAA and various courts' interpretation of "loss" and determined that revenue lost because a defendant used unlawfully gained information to unfairly compete was not a type of "loss" contemplated under the CFAA. *Nexans*, 319 F. Supp. 2d at 478.

*Id.* at 381 (emphasis added); *see also Jet One*, 2009 WL 2524864, at *6 (the narrow definitions of "damage" and "loss" are "wholly consistent with a limited Congressional intent in passing the CFAA").

Here, as in *Nexans* and *Civic Center*, Starwood cannot allege facts sufficient to show that it suffered damage or loss caused by computer inoperability or data impairment.  Starwood summarily pleads that its "ongoing effort" "to determine just what has been downloaded from Starwood's computer systems has taken considerable time and resources," (Am. Compl. ¶ 191), and the alleged actions of Defendants "have caused loss to Starwood that exceeds $5,000 in value during any one year period, in that Starwood has spent far in excess of $5,000 in responding to the offense and conducting a damage assessment" (*id.* ¶ 287).  However, Starwood has failed to allege facts regarding any purported "damage assessment" or the necessity to "restore" its computer system, as required.  Starwood's conclusory allegations are insufficient to allege damage or loss as required by the CFAA.[17]  Accordingly, the CFAA claim should be dismissed as a matter of law, and there is no proper basis for subject matter jurisdiction premised on federal question.[18]

---

[17]    Without any allegation that Starwood lost data or information, or that its computer system was impaired in any way, Starwood has not satisfied the "damage" requirement under the CFAA.  *See Del Monte Fresh Produce,* 616 F. Supp. 2d at 810 ("merely downloading and e-mailing confidential information is insufficient to show damages under the CFAA").

[18]    Where, as here, federal claims are dismissed at an early stage in litigation, or where state law claims predominate, district courts generally decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(2), (3); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Lynch v. Suffolk County Police Dep't, Inc.*, No. 07-3684-cv, 2009 WL 3287565, at *3 (2d Cir. Oct. 14, 2009) (same); *Civic Ctr.*, 387 F. Supp. 2d at 382 (same).

## II.

## DIVERSITY JURISDICTION DOES NOT EXIST BECAUSE
## STARWOOD AND LALVANI ARE BOTH NEW YORK CITIZENS

Diversity jurisdiction does not exist in this case because, at the time this action was filed, Starwood's principal place of business was in New York (Am. Compl. ¶ 89) and Lalvani's domicile was also there. Diversity jurisdiction exists under 28 U.S.C. § 1332(a) only when there is complete diversity between all plaintiffs and all defendants at the time the action is commenced. *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806); *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). The party invoking federal jurisdiction bears the burden of proving facts that establish jurisdiction. *Linardos*, 157 F.3d at 947; *see also Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Reynolds v. Wohl*, 332 F. Supp. 2d 653, 656 (S.D.N.Y. 2004) (Robinson, J.) (party alleging a change in domicile must support that allegation with "clear and convincing evidence").[19]

A person's citizenship for diversity purposes is determined by his domicile: "the place where he has 'his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Linardos*, 157 F.3d at 948, *quoting* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3612, at 526 (2d ed. 1984). A party's domicile is "presumed to continue" until it is superseded by a new domicile. *See Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998), *quoting Mitchell v. United States*, 88 U.S. 350, 353 (1874) ("'A domicile once acquired is presumed to continue until it is shown to have been changed.'"). A change of domicile does not occur unless two criteria are met: residence in the new domicile, and the intent to remain there; either without the other is insufficient. *See, e.g.*,

---

[19]     In contrast to Rule 12(b)(6), a motion challenging jurisdiction pursuant to Rule 12(b)(1) permits the Court to review and rely on evidence beyond the pleadings. *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 716-17 (S.D.N.Y. 2005).

*Linardos*, 157 F.3d at 948; *see also Boston Safe Deposit and Trust Co. v. Morse*, 779 F. Supp. 347, 349 (S.D.N.Y. 1991) ("Intent is the crux of the test because physical presence alone in a new location is insufficient to support a change of domicile.").

Lalvani's home and domicile has been New York since 2006, when he and his family moved back to New York City from Brussels, and invested virtually their entire life savings in a New York apartment. (*See* Lalvani Aff. ¶¶ 5-6.) While Lalvani and his family moved to California, temporarily, in June 2008, and resided there for approximately twelve months, they had no intent to remain in California indefinitely. Thus, the Lalvanis' move to California did not effect a change in domicile from their previously established domicile in New York. *See Gutierrez*, 141 F.3d at 428; *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 603 (S.D.N.Y. 1986) (holding that a person may not lose state citizenship without first acquiring a new domicile).

Courts look to numerous factors in determining a person's intent. The factors include:

> where a person resides, whether he owns a home or pays rent . . . where his family and personal belongings are located . . . where he maintains affiliations with religious and social organizations, where he transacts business and financial matters, where he pays taxes, and where he obtained a drivers license.

*Brignoli v. Balch, Hardy & Scheinman, Inc.*, 696 F. Supp. 37, 41 (S.D.N.Y. 1988) (internal quotations and citation omitted) (alterations in original). No single factor, or particular combination of factors, is determinative, and courts must consider the "totality of the evidence" in order to draw the necessary inferences as to intent. *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

Lalvani's intent to maintain his permanent residence, and thus, his domicile, in New York is evidenced by: (1) the temporary nature of his move to California; (2) the fact that he did not

sell his apartment in New York; (3) the fact that he retained extensive ties to New York; and (4) the fact that he returned to New York soon after his employment with Hilton ended.

*First,* the Lalvanis understood that their move to California would be temporary, and organized their lives accordingly. (Lalvani Aff. ¶¶ 7-14.) During the recruitment process, Goldman explicitly told Lalvani that Hilton's corporate headquarters in Beverly Hills would change, and that any move to Los Angeles was, therefore, temporary.[20] In addition, Lalvani's employment term sheet with Hilton confirms the temporary location of Hilton's headquarters. (*See* Lalvani Aff., Ex. A ("*[A]t this time*, the location of [the Company's headquarters] is in Beverly Hills, California") (emphasis added).) Because the move was short-term, Hilton paid Lalvani's rent for twelve months. (Lalvani Aff. ¶¶ 8.) Accordingly, Lalvani's move to California did not constitute a change in domicile.[21]

*Second,* the Lalvanis did not seek to sell their New York City apartment when they moved to California. Rather, they rented out their apartment, and left the majority of its furnishings in place. (Lalvani Aff. ¶ 9.) The Lalvanis also left irreplaceable personal effects in their apartment building in New York. (*Id*. ¶ 10.) Finally, they left their children's room untouched, including the theme decorations. (*Id*. ¶ 9.) The Lalvanis' decision to maintain their Manhattan apartment, replete with furniture and personal effects, strongly reflects their intent to

---

[20]    Indeed, Goldman did not move his family to Los Angeles from Chicago, nor did a number of other executives who were hired after Nassetta became the CEO of the company. (Lalvani Aff. ¶¶ 8, 20.) For example, Richard Lucas, Executive General Counsel, and Kevin Jacobs, Senior Vice-President, Corporate Strategy and Treasurer, did not relocate their families from Washington, D.C. (*Id.* ¶ 20.)

[21]    *See, e.g., Hendry v. Masonite Corp*., 455 F.2d 955, 956 (5th Cir. 1972) (defendant, who moved his residence from Mississippi to Chicago for a new job, and contracted to sell his home in Mississippi, had not yet established his domicile in Illinois – despite the fact that it was clearly the defendant's intention to become a citizen of Illinois "at some time"); *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 Civ. 10333, 2006 WL 300477, at *2-3 (S.D.N.Y. Feb. 7, 2006) (defendant's relocation from New Jersey to Pittsburgh for employment, approximately eight months before the lawsuit was filed, did not establish a change in domicile); *Webb v. Banquer*, 19 F. Supp. 2d 649, 654 (S.D. Miss. 1998); *Peregrine Myanmar Ltd. v. Segal*, No. 95 Civ. 8286, 1995 WL 723359, at *5-7 (S.D.N.Y. Dec. 7, 1995); *Liakakos v. Cigna Corp.*, 704 F. Supp. 583, 587 (E.D. Pa. 1988) (plaintiff, who kept his home in California, did not give up his California citizenship despite living and working in Greece for eight years).

remain domiciled in New York. *See Noreiga v. Lever Bros. Co., Inc.*, 671 F. Supp. 991, 994 (S.D.N.Y. 1987) ("Simply moving to New York, while maintaining an official status in New Jersey, suggests that plaintiff did not have the requisite intent to establish New York as her place of domicile.").

*Third,* the Lalvanis maintained extensive ties to New York during the time that they resided in California. For example, the Lalvanis maintained their bank accounts and their daughters' college savings accounts at a Manhattan branch of Citibank, and Lalvani's brokerage account in New York.[22] (*Id.* ¶ 12.) Lalvani continued to own a partial share in a Manhattan business, and maintained his membership at a Manhattan social club. (*Id.* ¶ 11.)[23]

*Finally,* after Lalvani's employment with Hilton ended in May 2009, the Lalvanis immediately made plans to return to New York. (*Id.* ¶ 23.) They sold the temporary furniture that they purchased in Los Angeles, and moved back to New York on June 20, 2009, leaving the day after their three-year-old daughter completed her preschool year in California. (*Id.*) Lalvani's return to New York City further evidences his intent to maintain a New York domicile.

In sum, though Lalvani may have been physically present in California when Starwood filed the instant action, the facts demonstrate that he had no intention of remaining there. Accordingly, Starwood cannot meet its burden of proving by clear and convincing evidence that Lalvani was, at the relevant time, domiciled in California.

---

[22]    Indeed, Lalvani opened a college savings account for his youngest daughter at a Citibank branch in Manhattan after he accepted the position at Hilton. (*Id.* ¶ 12.)

[23]    Lalvani registered to vote in California in September 2008, and he voted by mail in the November 2008 election. (Lalvani Aff. ¶ 17.) Subject to few limitations, any United States citizen who is 18 years of age or older, and who *resides* in California, may vote there. In contrast, courts have given particular weight to a person's voter registration behavior where the state requires *domicile* as a condition for voting in the state. *See, e.g., Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991) (New Hampshire's voter registration statute, which required citizenship as opposed to mere residence, was "tantamount to a representation of New Hampshire domicile to voting officials" in that state). In addition, the fact that Lalvani registered to vote in California is not probative of his citizenship because of his lack of demonstrated voting practices (he does not recall voting between 1992 and 2008). *See Boston Safe Deposit and Trust Co.*, 779 F. Supp. at 349 (absent a showing of existing voting practices, little weight should be given to "voter registration" as evidence of a change of domicile).

**III.**

**THE COURT SHOULD COMPEL CLAIMS RELATING TO
KLEIN'S SEPARATION AGREEMENT TO ARBITRATION**

In the event the Court finds that federal subject matter jurisdiction does exist for this action, the Defendants alternatively seek dismissal of certain claims from the Amended Complaint. Specifically, because of the broad arbitration clause in Klein's separation agreement with Starwood, the claims relating to that agreement should be compelled to arbitration. (Am. Compl. Ex. 3, ¶ 11.) Accordingly, Starwood's first, third, and fourth causes of action, which allege breach of the separation agreement, as well as allegations of tortious interference and fraudulent inducement with respect to the agreement, should be arbitrated.[24]

Federal law and policy generally favor arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 223 (2d Cir. 2001), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Paramedics Electromedicina Comercial, LTDA v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) ("Federal policy strongly favors the enforcement of arbitration agreements."); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) ("There is a strong federal policy favoring arbitration as an alternative means of dispute resolution.").

Where, as here, the arbitration clause is broad in scope, there is "a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (citations and quotations omitted); *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (language that "any controversy or claim between [the

---

[24]    *See* Am. Compl. ¶¶ 218-26 (Breach of Contract); ¶¶ 233-241 (Inducing Breach of Contract; Tortious Interference With Contractual Relations); and ¶¶ 242-51 (Fraud; Aiding and Abetting Fraud).

parties] arising out of or related to" the agreement is a "classically broad" arbitration clause);

*Calamia v. Riversoft Inc.*, No. 02-CV-1094, 2002 WL 31779991, at *3 (E.D.N.Y. Dec. 13, 2002)

(same).

The first cause of action, the purported breach of the separation agreement by Klein,

should be compelled to arbitration pursuant to its terms.  Moreover, the third and fourth causes of

action, which Starwood asserts against Klein, Hilton and Lalvani, should be compelled to

arbitration with respect to all Defendants.  With respect to these two claims, the "rights and

obligations" of Hilton and Lalvani are implicated by, and factually intertwined with, the

separation agreement and the allegations against Klein.  *See Louis Dreyfus*, 252 F.3d at 224, 228;

*JLM Indus. v. Stolt-Nielson SA*, 387 F.3d 163, 177-78 (2d Cir. 2004) (compelling arbitration

where issues sought to be arbitrated were "undeniably intertwined"); *Choctaw Generation Ltd.*

*P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001) (same); *see also Ross v.*

*Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008) (applying factual intertwinement analysis).

Accordingly, the first, third, and fourth causes of action of the Amended Complaint should be

compelled to arbitration.

## CONCLUSION

For the foregoing reasons, Defendants Hilton, Klein and Lalvani respectfully request that the Court grant their motion to dismiss in its entirety.

Dated:   February 26, 2010

By: _____

Aaron H. Marks, Esq. (amarks@kasowitz.com)
Leonard A. Feiwus, Esq. (lfeiwus@kasowitz.com)
Emilie B. Cooper, Esq. (ecooper@kasowitz.com)

Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Phone: (212) 506-1700
Fax: (212) 506-1800
*Attorneys for Defendant Hilton Hotels*
*Corporation n/k/a/ Hilton Worldwide*

Jeffrey I. Carton, Esq.
Meiselman, Denlea, Packman, Carton & Eberz P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
Phone: (914) 517-5000
Fax: (914) 517-5055

Ronald J. Nessim, Esq.
Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067
Phone: (310) 201-2100
Fax: (310) 201-2110
*Attorneys for Defendant Ross Klein*

Christopher J. Morvillo, Esq.
Edward M. Spiro, Esq.
Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.
565 Fifth Avenue
New York, New York  10017
Phone: (212) 856-9600
Fax: (212) 856-9494
*Attorneys for Defendant Amar Lalvani*