**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

STARWOOD HOTELS & RESORTS WORLDWIDE,
INC.,

                                   Plaintiff,

            - *against* -                       No. 09 Civ. 3862

HILTON HOTELS CORPORATION N/K/A HILTON
WORLDWIDE, ROSS KLEIN AND AMAR LALVANI,

                               Defendants.

---

### PLAINTIFF STARWOOD HOTELS & RESORTS WORLDWIDE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

 

CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

Attorneys for Plaintiff
Starwood Hotels & Resorts Worldwide, Inc.

Of Counsel:

    Charles A. Gilman
    David G. Januszewski
    Andrea R. Butler

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

HISTORY OF PROCEEDINGS...................................................................................4

ARGUMENT ...............................................................................................................6

I.     Defendants' Assertion that the Court Lacks Federal Question Jurisdiction Is
       Without Merit ................................................................................................... 6

II.    The Complaint Adequately Pleads a Claim Under the CFAA ........................... 7

       A.     Plaintiff Alleges that Defendants Wrongfully Accessed Starwood's
              Computers ...............................................................................................7

       B.     Plaintiff Alleges a Compensable Loss Under the CFAA.......................15

III.   The Court Also Has Diversity Jurisdiction....................................................... 16

       A.     Lalvani's California Voter Registration — and Accompanying
              Sworn Statement that California Is His "Domicile" — Weighs
              Heavily in Favor of Finding Diversity Exists Here ...............................18

       B.     Lalvani Has Not Established that He Ever Changed His Original
              California Domicile, and the Facts Demonstrate He Did Not ...............19

IV.    Defendants' Request for Arbitration is Without Merit...................................... 23

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009) ............................................................. 6

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) ....................................... 6

*Binary Semantics, Ltd.* v. *Minitab, Inc.*, 2008 WL 763575 (M.D. Pa.
Mar. 20, 2008) ............................................................................................. 14n

*Boxes, Inc.* v. *Davolt*, 2010 WL 575757 (E.D. Mo. Feb. 12, 2010) ...................... 11n

*Bro-Tech Corp.* v. *Thermax, Inc.*, 651 F. Supp. 2d 378 (E.D. Pa. 2009) ........... 15n

*Calence, LLC* v. *Dimension Data Holdings*, 2007 WL 1549495 (W.D.
Wash. May 24, 2007) .................................................................................... 15n

*Calyon* v. *Mizuho Securities USA, Inc.*, 2007 WL 2618658 (S.D.N.Y.
Sept. 5, 2007) ............................................................................................ 10-11, 16

*Charles Schwab & Co.* v. *Carter*, 2005 WL 2369815 (N.D. Ill. Sept. 27,
2005) ......................................................................................................... 14n

*Chevalier* v. *USA Express Moving & Storage Inc.*, 2004 WL 1207874
(S.D.N.Y. June 2, 2004) .................................................................................. 17

*Cohen* v. *Gerson Lehrman Group, Inc.*, --- F. Supp. 2d ---, 2010 WL
92484 (S.D.N.Y. Jan. 7, 2010) ...................................................................... 15n

*Del Monte Fresh Produce, N.A., Inc.* v. *Chiquita Brands International
Inc.*, 616 F. Supp. 2d 805 (N.D. Ill. 2009) .................................................. 15n-16n

*Dental Health Products, Inc.* v. *Ringo*, 2009 WL 1076883 (E.D. Wis.
Apr. 20, 2009) ............................................................................................. 11n

*In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y.
2001) ......................................................................................................... 16n

*EF Cultural Travel BV* v. *Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001) ............. 7n, 8, 10

*Ervin & Smith Advertising & Public Relations, Inc.* v. *Ervin*, 2009 WL
249998 (D. Neb. Feb. 3, 2009) .................................................................... 11n, 16n

*Feinberg* v. *Eckelmeyer*, 2009 WL 4906376 (E.D. Pa. Dec. 16, 2009) ................ 11n

*Galu* v. *Attias*, 923 F. Supp. 590 (S.D.N.Y. 1996) .............................................. 23

**Page**

*Global Policy Partners, LLC* v. *Yessin*, --- F. Supp. 2d ---, 2009 WL
4307459 (E.D. Va. Nov. 24, 2009) ............................................................... 10, 11n

*Goldman* v. *Belden*, 754 F.2d 1059 (2d Cir. 1985)......................................... 6

*Guest-Tek Interactive Entertainment, Inc.* v. *Pullen*, 665 F. Supp. 2d 42
(D. Mass. 2009)............................................................................................... 8-9, 11n

*Hartford Accident & Indemnification Co.* v. *Swiss Reinsurance Am.
Corp.*, 246 F.3d 219 (2d Cir. 2001) ............................................................... 24

*I.M.S. Inquiry Management Systems, Ltd.* v. *Berkshire Information Sys-
tems, Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) ....................................... 15-16

*International Airport Centers, L.L.C.* v. *Citrin*, 440 F.3d 418 (7th Cir.
2006) ................................................................................................................ 8, 10

*International Security Management Group, Inc.* v. *Sawyer*, 2006 WL
1638537 (M.D. Tenn. June 6, 2006) ............................................................ 11n

*Kavowras* v. *Pinkerton, Inc., U.S.A.*, 1998 WL 209617 (S.D.N.Y.
Apr. 29, 1998) ................................................................................................. 3

*Keg Technologies, Inc.* v. *Laimer*, 436 F. Supp. 2d 1364 (N.D. Ga. 2006).......... 11n

*Kluber Skahan & Assocs.* v. *Cordogen, Clark & Assoc.*, 2009 WL
466812 (N.D. Ill. Feb. 25, 2009).................................................................. 16n

*Lasco Foods, Inc.* v. *Hall & Shaw Sales, Marketing, & Consulting, LLC*,
2009 WL 3523986 (E.D. Mo. Oct. 26, 2009) ............................................. 11n

*Leveraged Leasing Administration Corp.* v. *Pacificorp Capital, Inc.*, 87
F.3d 44 (2d Cir. 1996)................................................................................... 23

*Lundquist* v. *Precision Valley Aviation, Inc.*, 946 F.2d 8 (1st Cir. 1991)............. 3, 19

*LVRC Holdings LCC* v. *Brekka*, 581 F.3d 1127 (9th Cir. 2009) ......................... 8

*Modis, Inc.* v. *Bardelli*, 531 F. Supp. 2d 314 (D. Conn. 2008)............................ 16n

*Motorola, Inc.* v. *Lemko Corp.*, 609 F. Supp. 2d 760 (N.D. Ill. 2009)................ 15n

*MPC Containment Systems, Ltd.* v. *Moreland*, 2008 WL 2875007 (N.D.
Ill. July 23, 2008) .......................................................................................... 11n, 14n

*National Artists Management Co.* v. *Weaving*, 769 F. Supp. 1224
(S.D.N.Y. 1991)............................................................................................... 4n

**Page**

*NCMIC Finance Corp.* v. *Artino*, 638 F. Supp. 2d 1042 (S.D. Iowa 2009) ......... 11, 15-16

*New York* v. *Oneida Indian Nation*, 90 F.3d 58 (2d Cir. 1996) ............................ 24

*Newman & Schwartz* v. *Asplundh Tree Expert Co.*, 102 F.3d 660 (2d Cir. 1996) ................................................................................................................ 6

*Nexans Wires S.A.* v. *Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004) ................................................................................................................ 11n, 14n, 16n

*Palazzo* v. *Corio*, 232 F.3d 38 (2d Cir. 2000) ........................................................ 3, 17n, 18, 20

*Penrose Computer Marketgroup, Inc.* v. *Camin*, --- F. Supp. 2d ---, 2010 WL 335753 (N.D.N.Y. Jan. 22, 2010) ............................................................ 15, 15n

*Personalized Brokerage Services, LLC* v. *Lucius*, 2006 WL 208781 (D. Minn. Jan. 26, 2006) ........................................................................... 11n

*Reynolds* v. *Wohl*, 332 F. Supp. 2d 653 (S.D.N.Y. 2004) ................................... 4, 17n, 18, 23

*Role Models America, Inc.* v. *Jones*, 305 F. Supp. 2d 564 (D. Md. 2004) .......... 14n

*Romano* v. *SLS Residential Inc.*, 246 F.R.D. 432 (S.D.N.Y. 2007) ..................... 6

*Southeastern Mechanical Services, Inc.* v. *Brody*, 2008 WL 4613046 (M.D. Fla. Oct. 15, 2008) ............................................................................. 11n, 14n

*Strawbridge* v. *Curtiss*, 7 U.S. 267 (1806) .......................................................... 2, 17

*Tyco International (US) Inc.* v. *John Does*, 2003 WL 21638205 (S.D.N.Y. July 11, 2003) .............................................................................. 16

*United States* v. *John*, --- F.3d ---, 2010 WL 432405 (5th Cir. Feb. 9, 2010) ................................................................................................................ 7n, 8, 12, 13

*United States* v. *Phillips*, 477 F.3d 215 (5th Cir. 2007) ....................................... 10

*Willis* v. *Westin Hotel Co.*, 651 F. Supp. 598 (S.D.N.Y. 1986) ............................ 20

**Congressional Reports**

S. Rep. No. 99-432 (1986) ....................................................................................... 11n-12n

S. Rep. No. 104-357 (1996) ..................................................................................... 11n, 16n

**Page**

## Statutes

Cal. Elec. Code

§ 349(a) (Thomson Reuters 2003) .................................................. 18
§ 349(b) (Thomson Reuters 2003) .................................................. 18
§ 2101 (Thomson Reuters 2003) ..................................................... 18

Cal. Veh. Code

§ 12505(a)(1) (Thomson Reuters supp. 2010) ................................ 3, 20

Computer Fraud and Abuse Act

18 U.S.C. § 1030 (2006), as amended ......................................... *passim*

Judicial Code

28 U.S.C. § 1331 (2006) ............................................................. 1, 6, 17
28 U.S.C. § 1332 (2006) ............................................................. 2, 17
28 U.S.C. § 1367 (2006) ............................................................. 2, 7, 17

## Treatises

2 Otto G. Obermaier & Robert G. Morvillo, *White Collar Crime* (2009) ............ 10

2 Michael C. Silberberg *et al.*, *Civil Practice in the Southern District of
New York* (2d ed. 2009) ................................................................. 19-20

13E Charles A. Wright *et al.*, *Federal Practice and Procedure* (3d ed.
2009) ............................................................................................. 17-18

## Other Authorities

Brennan Center for Justice, *Student Voting Project:  California*,
http://www.brennancenter.org/studentvoting/states/california (last
visited Mar. 10, 2010) ................................................................... 19n

New York Board of Elections, *Voting*, http://www.elections.state.ny.us/
voting.html (last visited Mar. 10, 2010) ........................................ 19n

California Department of Motor Vehicles, *Driver License and Identifica-
tion (ID) Card Information* (2010), *available at*
http://www.dmv.ca.gov/dl/dl_info.htm (last visited Mar. 10, 2010) .............. 20n

**Page**

League of Women Voters of L.A. Education Fund, *Guide to Voter Regis-
   tration* (2004), *available at* http://www.lwvlosangeles.org/files/
   voterregistration.pdf .................................................................................... 19n

New York Department of Motor Vehicles, *Definition of a Resident of
   NYS*, http://www.nysdmv.com/resident.htm (last visited Mar. 10,
   2010) .......................................................................................................... 20n

Secretary of State, *Guide to Voter Registration in California* (2006),
   *available at* http://www.sos.ca.gov/elections/guidetovr_1006.pdf................. 19n

Plaintiff Starwood Hotels & Resorts Worldwide, Inc. ("Starwood" or "Plaintiff") respectfully submits this Memorandum of Law in opposition to the motion to dismiss filed by Defendants Hilton Hotels Corporation n/k/a Hilton Worldwide ("Hilton"), Ross Klein ("Klein") and Amar Lalvani ("Lalvani") (collectively, "Defendants").

## PRELIMINARY STATEMENT

Defendants argue that the Court lacks jurisdiction over the subject matter of the action because Starwood fails to state a federal claim for relief and there is incomplete diversity of citizenship between the parties, and that three of the eleven claims alleged should be referred to arbitration. In all respects, Defendants' motion is without merit.

First, the Court has federal question jurisdiction. Starwood has asserted a claim for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), against all three Defendants. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Second, Starwood has stated a claim for relief under the CFAA. The CFAA prohibits "exceed[ing] authorized access" to obtain specified information from protected computers, or obtaining such information "without authorization," and provides a civil right of action for "[a]ny person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g). Like a cashier has authorization to open the cash register (but not authorization to steal the money), Klein and Lalvani had authorization to use their Starwood computers (but not to steal Starwood's confidential information for use by its competitor, Hilton). Klein and Lalvani knowingly violated both Starwood policy and their confidentiality agreements with Starwood while still employed at Starwood. Hilton has never had authorization to access Starwood's computers, and the conduct of its senior executives in inducing and accepting Klein and Lal-

-2-

vani's unauthorized access is the conduct of Hilton.  Whatever authorization Klein and Lalvani

had to access Starwood computer systems and Starwood confidential information was expressly

revoked when they left to join Hilton, a direct competitor, but Klein and Lalvani continued to

access Starwood's computer systems through others after they became Hilton executives, thereby

obtaining additional restricted and confidential Starwood information.  Starwood has alleged that

it has spent far in excess of the statutory prerequisite of $5,000 conducting an investigation and

damage assessment, thereby satisfying CFAA's requirements.  No more is required, and Star-

wood's CFAA claim states a claim upon which relief can be granted.

Because the Court has federal question jurisdiction, it has supplemental jurisdic-

tion over the related state law claims.  *See* 28 U.S.C. § 1367.

<u>Third, the Court has diversity jurisdiction</u>.  The Court also has subject matter ju-

risdiction under 28 U.S.C. § 1332.  At the time the action was commenced, Plaintiff Starwood

was a citizen of Maryland and New York, Defendant Hilton was a citizen of Delaware and Cali-

fornia, and Defendants Klein and Lalvani were citizens of California.  The Court therefore has

diversity jurisdiction.  28 U.S.C. § 1332; *Strawbridge* v. *Curtiss*, 7 U.S. 267 (1806).  Indeed, fol-

lowing the Court's issuance of an Order to Show Cause on April 16, 2009, all Defendants — in-

cluding Lalvani — affirmatively asked this Court to invoke its jurisdiction by issuing a prelimi-

nary injunction on April 23, 2009, and later by asking the Court to continue the preliminary in-

junction for the duration of the lawsuit.

Now, nearly a year later, Defendants suddenly claim that Lalvani was a citizen of

New York, not California, when the action was commenced.  While Lalvani provides a self-

serving (and inaccurate) affidavit, he and Defendants Hilton and Klein refuse to provide discov-

-3-

ery — even jurisdictional discovery — unless ordered to do so by the Court. But it is *undisputed* that Lalvani was born in California and, other than college, spent the first 23 years of his life living and working in California, where his father and brother still reside. Lalvani's California birth domicile is presumed to continue, and Lalvani bears the burden of demonstrating by "clear and convincing evidence" that he was not a citizen of California when this action was commenced. *See Palazzo* v. *Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Lalvani cannot meet his burden, and certainly not when he refuses to provide discovery, because:

- When this action was commenced on April 16, 2009, Lalvani resided together with his wife and children in California, and was personally served with the summons and complaint at his California residence. He had resided continuously at this California address since June 2008. Lalvani's residence at the time this action was filed is "prima facie evidence of his domicile." *Kavowras* v. *Pinkerton, Inc., U.S.A.*, 1998 WL 209617, at *1 (S.D.N.Y. Apr. 29, 1998).

- When this action was commenced, Lalvani was registered to vote in California, having registered on September 23, 2008 using his California address and noting his California birthplace. In doing so, Lalvani swore "under penalty of perjury" that his "domicile" was in the State of California. Lalvani voted in California in the 2008 general election. Lalvani's voluntary and objective sworn statements in connection with his 2008 voter registration — which directly contradict his sworn statement in this case — and his exercise of his right to vote in California are virtually conclusive of his California citizenship. *See Lundquist* v. *Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991).

- Lalvani has continuously maintained a California State driver's license since the age of 16, and chose to renew it in 2001 and 2006. To obtain that license, Lalvani represented that California was "the state where [he] has his . . . fixed and permanent home and principal residence and to which he . . . has manifested the intention of returning whenever he . . . is absent." Cal. Veh. Code § 12505(a)(1). His current California driver's license expires in May 2011.

- When this action was commenced, Lalvani had been continuously employed since June 2008 at Hilton's Beverly Hills, California corporate headquarters pursuant to a written agreement that expressly stated that he would be located there "for a minimum period of 12 months." Affidavit of Amar Lalvani in Support of Defendants' Motion to Dismiss ("Lalvani Aff.") Ex. A.

Lalvani's self-serving affidavit as to his purported (but vague) intentions is, at best, suspect in light of his California residence, his prior sworn statement attesting to a "domi-

-4-

cile" in California, and his continuous maintenance of a California driver's license, and is enti-

tled to little weight.[1]  His decision to relocate to New York *after* this lawsuit was commenced

and *after* he was fired by Hilton is irrelevant to the issue of this Court's subject matter jurisdic-

tion.  *See Reynolds* v. *Wohl*, 332 F. Supp. 2d 653, 656 (S.D.N.Y. 2004) (diversity jurisdiction is

determined by examining the citizenship of the parties at the time the action is commenced).

        Fourth, Starwood's First, Third and Fourth Claims for Relief are not subject to ar-

bitration.  Hilton and Lalvani are not parties to Klein's Separation Agreement with Starwood,

and Starwood is not party to any agreement with either Hilton or Lalvani requiring arbitration of

any of the claims alleged in Starwood's Complaint.  Under the express terms of Klein's Separa-

tion Agreement, Starwood's claims against Klein are not subject to arbitration.

## HISTORY OF PROCEEDINGS

        This action was commenced on April 16, 2009.  On that day, the Court entered an

Order compelling Hilton, Klein and Lalvani to show cause why discovery should not be expe-

dited in aid of Starwood bringing a motion for preliminary injunction.  No Defendant raised any

issue with respect to the Court's jurisdiction to do so.

        On April 23, 2009, on the consent of all parties, the Court entered a Preliminary

Injunction.  Again, no Defendant declined to consent to entry of the Preliminary Injunction, or

otherwise indicated that the Court did not have jurisdiction to do so.  That Preliminary Injunction

ordered, among other things, that Hilton return to Starwood any and all Starwood Confidential

---

[1]      *See*, *e.g.*, *National Artists Management Co.* v. *Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) ("[M]ere subjective statements of affiliation with a particular state or of an intent to make it one's home, of course cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.") (citation and internal quotation marks omitted).

-5-

Information in its possession, custody or control, wherever located.  It ordered Klein and Lalvani to gather and preserve all such information.  It enjoined all Defendants (among others) from knowingly using, directly or indirectly in any way, any Starwood Confidential Information or any information derived therefrom.

In July 2009, all parties asked the Court to continue the injunction.  Once again, no Defendant informed the Court that it did not have jurisdiction to do so.  As a result, on July 22, 2009, for good cause shown, the Court ordered: "The Preliminary Injunction shall, in its entirety, remain in full force and effect throughout this litigation."  Proceedings, including discovery, were stayed while Hilton responded to the Court's Order.  Since entry of the Preliminary Injunction, Hilton has returned to Starwood hundreds of thousands of pages of confidential Starwood Information.  *See* Transcript of 12/17/09 Hearing at pages 8-9.

On the consent of all parties, on December 17, 2009, the Court lifted the stay so that Starwood could file an amended complaint and discovery could begin.  On January 14, 2010, Starwood served and filed its Amended and Supplemental Complaint (the "Complaint").  On January 15, 2010, Starwood served interrogatories and document requests on Defendants, and on January 28, 2010, Starwood served requests for admission and additional document requests on Defendants related specifically to Defendants' respective citizenships for diversity purposes.  All three Defendants have refused to provide any discovery.  Starwood has served subpoenas for documents and depositions on non-parties presently or formerly associated with Hilton.  They, too, refuse to provide discovery.[2]  Now, for the first time, Defendants challenge the

---

[2]     On February 19, 2010, the United States moved to intervene and stay all proceedings in this case

Footnote continued on next page.

-6-

jurisdiction of the Court.  Defendants' motion is without merit and appears calculated to forestall

discovery — or the invocation of the Fifth Amendment by Klein, Lalvani and Hilton executives.

## ARGUMENT

With respect to Defendants' motion to dismiss Starwood's claim under the

CFAA, the Court "'must view all allegations raised in the complaint in the light most favorable

to [Starwood] . . . and must accept as true all factual allegations in the complaint.'" *Romano* v.

*SLS Residential Inc.*, 246 F.R.D. 432, 439 (S.D.N.Y. 2007) (quoting *Newman & Schwartz* v. *As-*

*plundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996)).  "[A] court is 'not to weigh the evi-

dence that might be presented at a trial but merely to determine whether the complaint itself is

legally sufficient.'"  *Romano*, 246 F.R.D. at 439 (quoting *Goldman* v. *Belden*, 754 F.2d 1059,

1067 (2d Cir. 1985)).  To survive a motion to dismiss, a complaint need contain "only enough

facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp.* v. *Twombly*, 550

U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the miscon-

duct alleged."  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## I.    Defendants' Assertion that the Court Lacks Federal Question Jurisdiction Is Without Merit

"The district courts shall have original jurisdiction of all civil actions arising un-

der the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff's Elev-

Footnote continued from previous page.

pending its criminal investigation of Defendants' conduct.  On February 22, 2010, Starwood filed a re-
sponse to that motion.  On February 26, Defendants filed responses to the government's motion.

-7-

enth Claim for Relief arises under the CFAA, 18 U.S.C. § 1030. Defendants suggest that this federal claim is an afterthought because it is the last claim asserted in the Complaint. In fact, it is last asserted so that all prior allegations in the Complaint could be easily incorporated by reference. *See* Complaint ¶ 280. Because Starwood has adequately alleged the elements of this federal claim, the Court has federal question jurisdiction over the CFAA claim, and also over all related claims pursuant to 28 U.S.C. § 1367.

## II.   The Complaint Adequately Pleads a Claim Under the CFAA

Defendants argue that the Court should dismiss Starwood's CFAA claims because (i) Starwood authorized Klein and Lalvani to use Starwood computers while they were employed by Starwood and Starwood does not allege any unauthorized access; and (ii) Starwood has failed to allege "loss" as defined by the CFAA. Both arguments are without merit.[3]

### A.   Plaintiff Alleges that Defendants Wrongfully Accessed Starwood's Computers

The CFAA provides for penalties against:

- whoever "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period," 18 U.S.C. § 1030(a)(4); and

---

[3]   Contrary to Defendants' suggestion that the CFAA is intended to address only computer hacking cases, courts have recognized that the CFAA has a far wider reach. *See, e.g.*, *United States* v. *John*, --- F.3d ---, 2010 WL 432405, at *4 (5th Cir. Feb. 9, 2010) (employee "exceeds authorized access" when she "knows that the purpose for which she is accessing information in a computer is both in violation of an employer's policies and is part of an illegal scheme"); *EF Cultural Travel* v. *Explorica, Inc.*, 274 F.3d 577, 583 (1st Cir. 2001) (employee "exceeds authorized access" by "providing proprietary information" to an outside party in violation of employment agreement).

-8-

- whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer," 18 U.S.C. § 1030(a)(2)(C).

As Defendants recognize, the CFAA "prohibits both accessing a computer 'without authorization' and 'exceed[ing] authorized access' to obtain specified information." *United States* v. *John*, 2010 WL 432405, at *2 (quoting 18 U.S.C. § 1030(a)(2)). "[T]he term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain . . . information in the computer that the accesser is not entitled so to obtain . . . ." 18 U.S.C. § 1030(e)(6). Simply stated: "[T]he concept of 'exceeds authorized access' may include exceeding the purposes for which access is 'authorized.' Access to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded." *John*, 2010 WL 432405, at *3. Every federal appellate court to have considered the issue has found that an employee who otherwise has permission to use a computer and access the information contained on an employer's systems "exceeds authorized access" when he does so in violation of company policy or with the intent to use the information for the advantage of a competitor. *See*, *e.g.*, *John*, 2010 WL 432405, at *3; *EF Cultural Travel BV* v. *Explorica, Inc.*, 274 F.3d 577, 583 (1st Cir. 2001); *LVRC Holdings LCC* v. *Brekka*, 581 F.3d 1127, 1129, 1132-33, 1135 (9th Cir. 2009) (summary judgment) ("exceed[ing] authorized access" may include using a computer in violation of an employer's policies). At the very least, a defendant (such as Hilton, and Klein and Lalvani once employed by Hilton) is "without authorization" altogether when he has never had permission to use a plaintiff's computer; in the view of most courts to have considered the issue, defendant employees (such as Klein and Lalvani while still employed by Starwood) are similarly "without authorization" when their use of their employer's computer is adverse to the interests of the employer or in violation of a duty owed to the employer. *See*, *e.g.*, *International Airport Centers, L.L.C.* v. *Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006); *Guest-Tek*

-9-

*Interactive Entertainment, Inc.* v. *Pullen*, 665 F. Supp. 2d 42, 45 (D. Mass. 2009) (describing narrow and broad readings of "without authorization" prong of CFAA analysis).

The allegations here cannot be more clear. Defendants Klein and Lalvani are alleged to have accessed Starwood's computers both "without authorization," and in excess of any authorization they may have had. Hilton is alleged to have accessed Starwood's computers without any authorization.

While employed at Starwood, both as a matter of their individual agreements with Starwood and as a matter of acknowledged corporate policies, Klein and Lalvani had limited authorization to access Starwood's computers and the information maintained on Starwood's systems. *See* Complaint ¶¶ 150-51, 154 (individual employment agreements and Starwood's Code of Business Conduct limited Klein's and Lalvani's authority) and ¶ 160 (forwarding of electronic information to non-Starwood servers or personal e-mail accounts prohibited under Starwood policy). They exceeded this limited authority when, both on their own and induced by Hilton, they accessed Starwood computers by e-mailing and forwarding confidential and proprietary data from Starwood computers to outside systems and transferring and downloading data to personal computers and hard drives that they provided to Hilton. *Id.* ¶¶ 41, 45, 154, 158-61, 174-75, 181.[4] Of course, Hilton itself never had authorization to access Starwood's computers, but did so

---

[4]     Defendants suggest that e-mailing, forwarding, transferring and downloading data from a computer does not constitute "access" under the CFAA. The argument is nonsense. When used with respect to computer-stored information, access does not refer to turning on a computer and placing one's hands on a keyboard or mouse. It refers to the retrieval and use of the data stored thereon. E-mailing, forwarding, transferring and downloading data are ways of accessing that data.

-10-

through Klein and Lalvani, both while they were still employed by Starwood and after they be-

came Hilton executives. *Id.* ¶¶ 42, 44-46, 174-75, 178.

   "Courts have . . . typically analyzed the scope of a user's authorization to access a

protected computer on the basis of the expected norms of intended use or the nature of the rela-

tionship established between the computer owner and the user." *United States* v. *Phillips*, 477

F.3d 215, 219 (5th Cir. 2007); *Global Policy Partners, LLC* v. *Yessin*, --- F. Supp. 2d ---, 2009

WL 4307459, at *4 (E.D. Va. Nov. 24, 2009).  Where a corporate employer has broad confiden-

tiality agreements with its employees — as Starwood does here with Klein, Lalvani and others

(*see* Complaint ¶¶ 56, 86, 88, 146-48, 153-54, 160, 195) — an employee violates the CFAA

when he accesses his employer's computer system for the purpose of taking confidential infor-

mation to a competitor.  *See EF Cultural Travel*, 274 F.3d at 581-84 (because of confidentiality

agreements, the former employees' wholesale use of accessed computer information to aid a

competitor "reeks of use — and, indeed, abuse — of proprietary information that goes beyond

any authorized use"); *Citrin*, 440 F.3d at 420-21; *Calyon* v. *Mizuho Securities USA, Inc.*, 2007

WL 2618658, at *1 (S.D.N.Y. Sept. 5, 2007); *accord* 2 Otto G. Obermaier & Robert G.  Mor-

villo, *White Collar Crime* § 21.03[1][b], at 21-18–21-19 (2009) ("In the noteworthy case, [*Ci-*

*trin*], the Seventh Circuit held that an employee's access to data became unauthorized when

breach of his duty of loyalty terminated his agency relationship.").

   Moreover, any existing authorization an employee may have to access an em-

ployer's computers "terminates if, without knowledge of the principal, he acquires adverse inter-

ests or if he is otherwise guilty of a serious breach of loyalty to the principal." *Citrin*, 440 F.3d

at 421 (citation and internal quotation marks omitted); *see also Calyon*, 2007 WL 2618658, at

-11-

*1; *NCMIC Finance Corp.* v. *Artino*, 638 F. Supp. 2d 1042, 1056 (S.D. Iowa 2009) ("[T]he CFAA confers liability on an employee who accesses an employer's computer in order to obtain business information for his own personal benefit and to the detriment of his employer," thereby breaching his duties and obligations to his employer).[5]  As these cases make clear, where an employee has stolen information from an employer's computer, courts have interpreted the statute with common sense consistent with its plain language.  Thus, in *Calyon*, 2007 WL 2618658, at *1, the Court denied a motion to dismiss a CFAA claim, rejecting the same arguments made here by Defendants:

> "the plain language of the statute seems to contemplate that, whatever else, 'without access' and 'exceeds authorized access' would include an employee who is accessing documents on a computer system which that employee had to know was in contravention of the wishes and interests of his employer."

This view is supported by the CFAA's legislative history.[6]

---

[5]     *See also Boxes, Inc.* v. *Davolt*, 2010 WL 575757, at *3 (E.D. Mo. Feb. 12, 2010); *Feinberg* v. *Eckelmeyer*, 2009 WL 4906376, at *7  (E.D. Pa. Dec. 16, 2009); *Global Policy Partners, LLC*,  2009 WL 4307459, at *4; *Lasco Foods, Inc.* v. *Hall & Shaw Sales, Marketing, & Consulting, LLC*, 2009 WL 3523986, at *3-*4 (E.D. Mo. Oct. 26, 2009); *Guest-Tek*, 665 F. Supp. 2d at 45-46; *Dental Health Products, Inc.* v. *Ringo*, 2009 WL 1076883, at *7-*8 (E.D. Wis. Apr. 20, 2009); *Ervin & Smith Advertising & Public Relations, Inc.* v. *Ervin*, 2009 WL 249998, at *8 (D. Neb. Feb. 3, 2009); *Southeastern Mechanical Services, Inc.* v. *Brody*, 2008 WL 4613046, at *14 (M.D. Fla. Oct. 15, 2008); *MPC Containment Systems, Ltd.* v. *Moreland*, 2008 WL 2875007, at *14 (N.D. Ill. July 23, 2008); *Keg Technologies, Inc.* v. *Laimer*, 436 F. Supp. 2d 1364, 1380 (N.D. Ga. 2006); *International Security Management. Group, Inc.* v. *Sawyer*, 2006 WL 1638537, at *20-*21 (M.D. Tenn. June 6, 2006); *Personalized Brokerage Services, LLC* v. *Lucius*, 2006 WL 208781, at *2 (D. Minn. Jan. 26 2006).  *Nexans Wires S.A.* v. *Sark-USA, Inc.*, 319 F. Supp. 2d 468, 470, 472 (S.D.N.Y. 2004), *aff'd*, 166 Fed. App'x 559 (2d Cir. 2006), is fairly read to have adopted the broad view of the CFAA, for the Court had no trouble applying the statute to the situation where former employees had "full access" to their former employer's computer system but, as here, "used [] personal . . . e-mail account[s] to download plaintiffs' proprietary information, without [their former employer's] approval, and then sent the information to defendants" at the defendants' "direction."

[6]     *See* S. Rep. No. 104-357, at *7 (1996) ("[S]ubsection 1030(a)(2)(C) is intended to protect against the interstate or foreign theft of information by computer. . . . *This subsection would ensure that the theft of intangible information by the unauthorized use of a computer is prohibited in the same way theft of physical items are protected.*"  (emphasis added)); *see also* S. Rep. No. 99-432 at *9 (1986) ("Section

Footnote continued on next page.

-12-

Last month, the Fifth Circuit addressed a CFAA claim similar to that alleged here, involving an employee of Citigroup who, by virtue of her position, had authorization to access Citigroup's internal computer system containing customer account information, but nevertheless provided a confederate outside the company with customer account information (enabling him to make fraudulent charges). *United States* v. *John*, 2010 WL 432405, at *1. As here, the defendant argued that the CFAA "does not prohibit unlawful *use* of material that she was authorized to access through authorized use of a computer." *Id*. at *2. The Court of Appeals had no difficulty rejecting the argument:

> "The question before us is whether 'authorized access' or 'authorization' may encompass limits placed on *the use* of information obtained by permitted access to a computer system and data available on that system. We conclude that it may, at least when the user knows or reasonably should know that he or she is not authorized to access a computer and information obtainable from that access in furtherance of or to perpetrate a crime.
>
> "To give but one example, an employer may 'authorize' employees to utilize computers for any lawful purpose but not for unlawful purposes and only in furtherance of the employer's business. An employee would 'exceed[] authorized access' if he or she used that access to obtain or steal information as part of a criminal scheme." 2010 WL 432405, at *2.

This is precisely what Starwood has alleged in this case: that Defendants accessed documents on Starwood's computer systems in an manner that they knew was in contravention of the wishes and interests (not to mention the explicit policies) of Starwood. *See*, *e.g*., Complaint ¶¶ 154, 160, 181. Like the employee in *John*, Klein and Lalvani were authorized to use an employer's computer, but they were "not authorized to access that information for any

---

Footnote continued from previous page.

2(c) substitutes the phrase 'exceeds authorized access' for the more cumbersome phrase in present 18 U.S.C. § 1030(a)(1) and (a)(2), 'or having accessed a computer with authorization, uses the opportunity such access provides for purposes to which such authorization does not extend.' The Committee intends this change to simplify the language in 18 U.S.C. 1030(a)(1) and (2) . . . .").

-13-

and all purposes but for limited purposes." *John*, 2010 WL 432405, at *3. They were authorized to access Starwood's computers for the business of Starwood, not the business of its competitor Hilton. "[W]hen an employee knows that the purpose for which she is accessing information in a computer is both in violation of an employer's policies and is part of an illegal scheme, it would be 'proper' to conclude that such conduct 'exceeds authorized access' within the meaning of § 1030(a)(2)." *Id*. at *4. Although Starwood certainly also alleges that Defendants misused the information they stole, such allegations do not undermine the allegations that Defendants wrongfully obtained the information in the first place, including by accessing Starwood's computer systems in unauthorized ways. That Klein and Lalvani took steps to cover their tracks in connection with this unauthorized access (*see*, *e.g*., Complaint ¶¶ 42, 44, 155, 174-75) could not make it more clear that they knew they were not supposed to be accessing and transferring Starwood's files for purposes of providing them to a competitor.

Defendants urge a contrary (and crabbed) view of the CFAA — that an employee lacks authority only where he has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway (Def. Mem. at 10-14) — that is inconsistent with its language and legislative history, as well as the weight of the case law. But even under Defendants' narrow view, Starwood states a claim because the Amended Complaint alleges that:

- Klein and Lalvani each forwarded Starwood electronic information to their personal e-mail accounts prior to providing the information to Hilton, in violation of Starwood's explicit policies to the contrary. Complaint ¶¶ 154, 158-60, 174-75, 181.

- "Defendants (and others working under their direction and at their express instruction) intentionally accessed Starwood's protected computer system,

-14-

without authorization . . . ." *Id.* ¶ 282. "Defendants knowingly and with intent to defraud, accessed Starwood's protected computer system, without authorization . . . ." *Id.* ¶ 283. "Defendants intentionally accessed Starwood's protected computer system without authorization . . . ." *Id.* ¶ 286.

- "Klein and Lalvani and others working with them stole for Hilton hundreds of thousands of electronic and hard-copy Starwood files, including files containing some of Starwood's most competitively sensitive information." *Id.* at ¶ 15; *see also id.* ¶¶ 9, 196, 213.

- While he was employed by Starwood, Defendant Lalvani forwarded confidential Starwood electronic information directly to Hilton's President of Global Development & Real Estate, Steven Goldman. *Id.* ¶¶ 44, 174-75, 178.

- Klein and Lalvani's access of Starwood's computer systems and transmission of electronic files to home addresses (and ultimately to Hilton) continued after they had accepted employment by Hilton for Hilton's benefit. *Id.* ¶¶ 42, 45, 46, 162-63, 178, 196.[7]

- Hilton induced and/or benefited from Klein and Lalvani's unauthorized access. *Id.* ¶¶ 9, 15, 77, 101, 109, 196.

In short, the Complaint alleges that (i) Klein and Lalvani accessed Starwood computers in knowing contravention of Starwood policy and their explicit agreements; (ii) Hilton, Klein and Lalvani accessed Starwood computers by inducing and directing others within Starwood; (iii) whatever authorization Klein and Lalvani had to access Starwood computers was *revoked* when

---

[7]     The actions of Klein, Lalvani and others are the acts of Hilton. *See Nexans Wires*, 319 F. Supp. 2d at 472 (liability imputed where plaintiff alleged former employee "acted at the direction" of new employer); *MPC Containment Systems., Ltd.* v. *Moreland*, 2008 WL 2875007, at *14-*15 (N.D. Ill. July 23, 2008) (finding liability may extend to a party who does not physically access computer but "directs or even encourages the sender to e-mail the information, or where the sender acts as the recipient's agent") (citation and internal quotation marks omitted); *Southeastern Mechanical Services*, 2008 WL 4613046, at *14 (liability reaches third party who "implicitly induced and/or encouraged [others] to access and use [computer] information without authorization"); *Binary Semantics, Ltd.* v. *Minitab, Inc.*, 2008 WL 763575, at *5 (M.D. Pa. Mar. 20, 2008) (same); *Charles Schwab & Co.* v. *Carter*, 2005 WL 2369815, at *7 (N.D. Ill. Sept. 27, 2005) ("To hold otherwise would exempt a principal from liability when its agent improperly accessed a computer at the direction of the principal."). Defendants' reliance on *Role Models America, Inc.* v. *Jones*, 305 F. Supp. 2d 564 (D. Md. 2004), is misplaced, because in that case "[t]here is no claim" that one defendant "directed or even encouraged" the other "to access" computers, "nor any factual allegations supporting an agency relationship." *Id.* at 568.

-15-

they left Starwood to work for Hilton, a direct competitor; and (iv) Hilton *never* had permission to access Starwood's computers.

**B.      Plaintiff Alleges a Compensable Loss Under the CFAA**

Finally, Defendants argue that Starwood has no compensable "loss." Again, Defendants are wrong. The term "loss" means "any reasonable cost to any victim, including the cost of responding to an offense [including] conducting a damage assessment . . . ." 18 U.S.C. § 1030(e). *See Penrose Computer Marketgroup, Inc.* v. *Camin*, --- F. Supp. 2d. ---, 2010 WL 335753, at *3-*4 (N.D.N.Y. Jan. 22, 2010); *NCMIC Finance Corp.* v. *Artino*, 638 F. Supp. 2d 1042, 1063 (S.D. Iowa 2009). The CFAA requires a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V). The Complaint alleges that Defendants breached Starwood's computer systems (Complaint ¶¶ 9, 15, 42, 44, 45, 46, 101, 109, 154, 174-75, 178, 196, 213), and that Starwood "has spent far in excess of $5,000 in responding to the offense and conducting a damage assessment" (¶ 287). That is enough.[8] *See I.M.S. Inquiry Management Systems, Ltd.* v. *Berkshire Information Systems, Inc.*,

---

[8]      The crux of Defendants' argument is that Starwood's investigation and response was not aimed at determining whether its computer systems were damaged or impaired. This is a factual argument inappropriate on a motion to dismiss. *See Cohen* v. *Gerson Lehrman Group, Inc.*, --- F. Supp. 2d ---, 2010 WL 92484, at *6 (S.D.N.Y. Jan. 7, 2010) ("To the extent that plaintiff asserts that the losses 'appear' to include 'damages that are not recoverable under the CFAA,' the factual nature of the alleged loss is more appropriately raised at summary judgment or at trial."); *Motorola, Inc.* v. *Lemko Corp.*, 609 F. Supp. 2d 760, 768 (N.D. Ill. 2009) (holding allegations that plaintiff lost statutory amount "related to damage and security assessments" sufficient to satisfy pleading standard); *Penrose Computer Marketgroup*, 2010 WL 335753, at *3-*4 (same). Indeed, many of the CFAA cases cited by Defendants were decided at the summary judgment stage. *See*, *e.g.*, *Bro-Tech Corp.* v. *Thermax, Inc.*, 651 F. Supp. 2d 378, 407-08 (E.D. Pa. 2009); *Calence, LLC* v. *Dimension Data Holdings*, 2007 WL 1549495, at *6 (W.D. Wash. May 24, 2007) (finding, on motion for summary judgment, that "plaintiff points to no evidence in the record that corporate defendants *directed* either of those individuals to take any of the alleged improper actions") (emphasis added); *Del Monte Fresh Produce, N.A., Inc.* v. *Chiquita Brands International Inc.*, 616 F.

Footnote continued on next page.

-16-

307 F. Supp. 2d 521, 525-26 (S.D.N.Y. 2004); *Tyco International (US) Inc.* v. *John Does,* 2003 WL 21638205, at *1 (S.D.N.Y. July 11, 2003) (the CFAA "allows recovery for losses beyond mere physical damage to property [and includes] those costs necessary to assess the damage"); *NCMIC Finance Corp.*, 638 F. Supp. 2d at 1064 ("loss" includes "damage assessment and remedial measures") (citation and internal quotation marks omitted); *Calyon*, 2007 WL 2618658, at *1.[9]

## III.    The Court Also Has Diversity Jurisdiction

Defendants assert that the Court lacks diversity jurisdiction.  The issue need not be addressed because, as demonstrated above, the Court has jurisdiction over the subject matter

---

Footnote continued from previous page.

Supp. 2d 805, 811 (N.D. Ill. 2009) (reviewing factual record).

[9]    Defendants misread *Nexans Wires*, 319 F. Supp. 2d 468, in citing it for the proposition that a plaintiff cannot allege a CFAA claim unless a computer is physically impaired or damaged.  Defendants, for example, cannot argue that an individual who hacks into another's computer, steals that individual's credit card information and charges hundreds of thousands of dollars is not liable under the CFAA because the computer was not physically impaired or damaged.  The same holds true here, where Defendants accessed Starwood's computers, took highly valuable information, and then used it for their own benefit.  *See Ervin & Smith Advertising and Public Relations, Inc.* v. *Ervin*, 2009 WL 249998, at *9 (D. Neb. Feb. 3, 2009) ("[S]hould the Court adopt the Defendants' reasoning and limit recovery under the CFAA to those instances in which a plaintiff can demonstrate actual, physical damage to a computer or computer system, this Court's ruling would flout Congress's intent in creating the CFAA.") (citation and internal quotation marks omitted); *Kluber Skahan & Assocs.* v. *Cordogen, Clark & Assoc.*, 2009 WL 466812, at *7 (N.D. Ill. Feb. 25, 2009) ("[T]he terms 'damage' and 'loss' are conceptually distinct: whereas 'damage' contemplates harms to data and information, 'loss' refers to monetary harms"); *Modis, Inc.* v. *Bardelli*, 531 F. Supp. 2d 314, 320 (D. Conn. 2008) ("[T]he costs of responding to the offense are recoverable regardless of whether there is an interruption in service, and federal courts have sustained actions based on allegations of costs to investigate and take remedial steps in response to a defendant's misappropriation of data.") (citation and internal quotation marks omitted); *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 521 (S.D.N.Y. 2001) (finding that the legislative history makes "clear that Congress intended the term 'loss' to target remedial expenses borne by victims that could not properly be considered direct damage caused by a computer hacker"); S. Rep. No. 104-357, at 11 (describing situation where system administrator is required to devote resources to resecuring the system — although there is arguably no "damage," the victim does suffer compensable "loss").

-17-

of the action based on federal question jurisdiction, *see* 28 U.S.C. § 1331, and over all related claims pursuant to 28 U.S.C. § 1367. However, the Court also has diversity jurisdiction. At the time the action was commenced, Starwood was a citizen of Maryland and New York, Hilton was a citizen of Delaware and California, and Klein and Lalvani were citizens of California. *See* Complaint ¶¶ 83, 89-92. Thus, the Court has diversity jurisdiction. *See* 28 U.S.C. § 1332; *Strawbridge* v. *Curtiss*, 7 U.S. 267 (1806).

Defendants challenge only the Complaint's allegation that Lalvani was a citizen of California, now claiming that at the time the action was commenced he was a citizen of New York.[10] At the same time, however, Lalvani and his co-Defendants refuse to provide any discovery, including discovery designed to test Lalvani's claim of New York citizenship. Nevertheless, *undisputed* (or indisputable) facts (documentary proof of which is marshaled in the accompanying Declaration of Charles A. Gilman ("Gilman Dec.")) demonstrate that, Lalvani's current assertions notwithstanding, Lalvani is, and has previously sworn under penalty of perjury that he is, a citizen of California. Because it "conflicts with other facts that disclose a contrary intent," Lalvani's self-serving affidavit should be given "little weight" in determining questions of his citizenship for diversity purposes. *Chevalier* v. *USA Express Moving & Storage Inc*., 2004 WL 1207874, at *2 (S.D.N.Y. June 2, 2004); *see also* 13E Charles A. Wright *et al*., *Federal Practice*

---

[10] The state "citizenship" of an individual is determined by his or her "domicile." *Palazzo* v. *Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Courts have defined domicile as "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Reynolds* v. *Wohl*, 332 F. Supp. 2d 653, 657 (S.D.N.Y. 2004) (citation omitted). "At any given time a person has but one domicile." *Palazzo*, 232 F.3d at 42. The question of whether diversity jurisdiction exists is determined by the citizenship of the parties when the action is commenced. If diversity jurisdiction exists at that time, it may not be divested by a subsequent move. *Reynolds*, 332 F. Supp. 2d at 656.

-18-

*and Procedure* § 3612, at 549 (3d ed. 2009) ("A party's own declarations concerning the identity of his domicile, particularly with regard to an intent to retain or establish one, as is true of any self-serving statement, are subject to judicial skepticism.  As many federal courts have made clear, they are accorded little weight by the district judge when they are in conflict with the facts or a party's actual conduct.").

> A.     **Lalvani's California Voter Registration — and Accompanying Sworn Statement that California Is His "Domicile" — Weighs Heavily in Favor of Finding Diversity Exists Here**

At the time this action was commenced, Lalvani and his wife resided in California and both were registered to vote in California, not New York.  (Gilman Dec. ¶¶ 4, 12-13)  When he registered to vote in California in September 2008, Lalvani signed an affidavit in which he swore "under penalty of perjury" that he met the eligibility requirements to vote in California. (*Id*. ¶¶ 12, 14).  The California Election Code sets forth the requirement that "[a] person entitled to register to vote shall be a United States citizen [and] resident of California. . . ."  Cal. Elec. Code § 2101.  Contrary to Defendants' representation of California law (Def. Mem. at 23n), the Code further provides: "'Residence' for voting purposes means a person's *domicile*."  *Id*. § 349(a) (emphasis added).  Moreover, the Code defines "domicile" as "that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning" and that at any given time "a person may have only one domicile." *Id.* § 349(b).  This is precisely the definition of "domicile" that is used in this Circuit for purposes of the diversity statute.  *See Palazzo*, 232 F.3d at 42; *Reynolds*, 332 F. Supp. 2d at 657.  As a result, by registering to vote in California and voting in the 2008 election, Lalvani (and his wife) affirmatively represented to California voting officials "un-

-19-

der penalty of perjury" that California was their "domicile." Such a voluntary and objective act, coupled with the actual exercise of voting rights, is virtually conclusive of citizenship, and should be in this case.[11] *See Lundquist* v. *Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991) (in light of requirements of New Hampshire voting law, defendant's "voting behavior is tantamount to a representation of New Hampshire domicile to voting officials").

**B.    Lalvani Has Not Established that He Ever Changed His Original California Domicile, and the Facts Demonstrate He Did Not**

Lalvani was born and raised in California, and at the time this action was commenced he (together with his wife and children) resided in a house in California where he had resided continuously since June 2008. Lalvani was served with the summons and complaint in this action at his California residence. Lalvani's California birth domicile is presumed to continue, *see* 2 Michael C. Silberberg, *et al.*, *Civil Practice in the Southern District of New York*

---

[11]    Lalvani need not have opened the California Code or reviewed the case law to learn that in registering to vote in California, he was representing under penalty of perjury that California was his "domicile." California voting brochures say so, *see*, *e.g.*, Secretary of State, *Guide to Voter Registration in California* (2006), *available at* http://www.sos.ca.gov/elections/guidetovr_1006.pdf (Gilman Dec. ¶ 15), and this information is readily and clearly available in guides meant to assist college students and other voters (including the homeless) in understanding their rights and obligations. *See*, *e.g.*, League of Women Voters of L.A. Education Fund, *Guide to Voter Registration* (2004) (voter pamphlet), *available at* http://www.lwvlosangeles.org/files/voterregistration.pdf; Brennan Center for Justice, *Student Voting Project: California*, http://www.brennancenter.org/studentvoting/states/california (last visited Mar. 10, 2010) (Gilman Dec. ¶¶ 16-17). Lalvani swears in his affidavit that New York does not offer the option of voting via mail-in ballot. Lalvani Aff. ¶ 17. New York does offer the option of voting via absentee ballot, and if Lalvani was, as he now purports to be, a New York domiciliary temporarily out of the state for business he would have been able to obtain and vote in an election via absentee ballot. *See* New York Board of Elections, *Voting*, http://www.elections.state.ny.us/voting.html (last visited Mar. 10, 2010) (Gilman Dec. ¶ 18). Lalvani would, however, have been required to represent, of course, that he was a resident of New York and he was "unavoidably absent" from New York City on election day. (*Id.*) He was apparently unable or unwilling to do so until the filing of this motion to dismiss.

-20-

§ 24:5 (2d ed. 2009), and Lalvani bears the burden of demonstrating by "clear and convincing

evidence" that he ever established a new domicile in New York. *See Palazzo*, 232 F.3d at 42;

*Willis* v. *Westin Hotel Co.*, 651 F. Supp. 598, 603 (S.D.N.Y. 1986).

   As Lalvani's own affidavit makes clear, Lalvani has held a State of California

driver's license continuously since he was originally licensed at age 16, and has renewed it re-

peatedly over the years, including during periods when he temporarily resided in New York and

Brussels.[12]  In order to obtain or renew a California driver's license, California must be "the state

where the person has his or her fixed and permanent home and principal residence and to which

he or she has manifested the intention of returning whenever he or she is absent."  Cal. Veh.

Code § 12505(a)(1).

   Contrary to his new assertion of a New York domicile, in a 2008 "talent review"

by Starwood — the last he had before leaving for Hilton — Lalvani stated that any future role in

Starwood "must be international" and that one of his "career aspirations" was to be "President,

Asia Pacific or EAME [Europe, Africa and the Middle East]," positions located in Singapore and

---

[12] Lalvani renewed his California license in or about May 2006, and it does not expire until May 15,
2011.  (Gilman Dec. ¶ 6; Lalvani Aff. ¶ 15).  Lalvani's wife also held a California driver's license at the
time this action was commenced, and does so currently.  (Gilman Dec. ¶ 7; Lalvani Aff. ¶ 16)  Both of
them also held Belgian driver's licenses.  (Lalvani Aff. ¶¶ 15-16)  Lalvani swears that California prohibits
the use of a foreign license after a certain number of days in the state.  (Lalvani Aff. ¶16)  That is not true.
*See* California Department of Motor Vehicles, *Driver License and Identification (ID) Card Information*,
http://www.dmv.ca.gov/dl/dl_info.htm (last visited Mar. 10, 2010) (California motor vehicle law pro-
vides: "If you are a visitor in California over 18 and have a valid driver license from your home state or
country, you may drive in this state without getting a California driver license as long as your home state
license remains valid.") (Gilman Dec. ¶ 10).  If he was only a visitor in California, Lalvani did not need a
California driver's license.  When this action was commenced, neither Lalvani nor his wife held a New
York driver's license.  If Lalvani and his wife had intended to make New York their permanent domicile,
they were required by law to exchange their out-of-state licenses for New York licenses.  *See* New York
Department of Motor Vehicles, *Definition of a Resident of NYS*, http://www.nysdmv.com/resident.htm
(last visited Mar. 10, 2010) (Gilman Dec. ¶ 11).  They did not do so.

-21-

Belgium (where Lalvani had previously worked), respectively.  (Gilman Dec. ¶ 19)  In response

to the question of whether he was "[w]illing to relocate" Lalvani stated: "Yes, for the right posi-

tion.  I have lived and worked in the US, Europe and Asia and am willing to relocate for the right

position."  *Id.*  These statements further point to a conclusion that Lalvani is, and has always

been, domiciled in California and has never taken sufficient steps to establish a new domicile

anywhere he has temporarily resided (whether Pennsylvania, Massachusetts, New York or Brus-

sels).

        Lalvani's self-serving affidavit to the contrary is suspect and entitled to little

weight.  We look forward to testing his credibility and having the Court observe his testimony.

In any event, we believe that, in addition to the facts set forth above, additional evidence will

show that, at the time this action was commenced, Lalvani was legally a citizen of California and

considered himself a denizen of the world:

- Lalvani makes much of the fact that when he joined Hilton's corporate head-quarters in June 2008 he did not sell an apartment he owned in New York City.  (Lalvani Aff. ¶¶ 8-9)  A plausible conclusion could be drawn from the Lalvanis' decision not to sell their home in the summer of 2008 other than that they intended to make it their permanent residence, including the possi-bility that, like other high end Manhattan real estate, the apartment — pur-chased in November 2006 at the height of the real estate market for ap-proximately $1.9 million — had lost appreciable value and because Lalvani was being provided housing in California at Hilton's expense he had no need to sell it at a loss.  (*See* Gilman Dec. ¶ 21; Lalvani Aff. ¶ 8.)

- Lalvani makes much of the fact that he left furnishings in his New York City apartment when he and his family relocated back to California.  (Lalvani Aff. ¶ 9)  But in June 2008 Lalvani listed the apartment for rent with Corcoran Group Real Estate as "AVAILABLE FURNISHED OR UNFURNISHED FOR A MINIMUM OF 6 MONTHS."  (*See* Gilman Dec. ¶ 21)  We believe that the evidence will show that reasons other than a desire to return to New York prompted Lalvani to leave furniture in his apartment — including be-cause a prospective renter wanted it furnished, and because he had no need for furniture in California as Hilton was already paying for a furnished resi-dence for him and his family.

-22-

- Lalvani makes much of the fact that when he joined Hilton he maintained his membership in Soho House on Ninth Avenue in Manhattan. (Lalvani Aff. ¶ 11) To the extent that this "fact" should be given any weight (and its probative value on the issue of domicile is dubious), it appears that Lalvani held the $2,400 per year "Every House" membership, which provides access to all affiliated facilities worldwide (including in London and other European cities, where Lalvani frequently traveled), and in June 2008 Soho House was in the process of building an affiliated facility in West Hollywood, California. (*See* Gilman Dec. ¶ 22.)

- Lalvani asserts that he told the building management of his condominium that he intended to return to the apartment in one to two years. (Lalvani Aff. ¶ 13) The fact — not stated in his affidavit — is that in May 2008 Defendant Lalvani entered into a multi-year agreement with Hilton that would pay bonuses on the first, second and third anniversaries of his employment and called for him to work at Hilton's corporate headquarters. (*See* Gilman Dec. ¶ 20; Lalvani Aff. Ex. A.) Lalvani's apartment is in a small Tribeca building and it is possible that he was not permitted under the governing condominium documents to lease out his apartment indefinitely without expressing an intention to return.

- Lalvani makes much of the fact that he maintained an account with Citibank. (Lalvani Aff. ¶ 12) To the extent that the location where Lalvani happened to open a bank account can be of any relevance to his domicile in today's age of largely electronic banking, Citibank has a branch located in Pacific Palisades, California less than one-half mile from Lalvani's California home. (*See* Gilman Dec. ¶ 23.) To the extent the Court deems this factor relevant to its analysis, Starwood is entitled to discovery as to the Lalvanis' relative use of the New York and California Citibank branches.

- Lalvani informed his former Starwood assistant that she should not transfer his cellular phone service, telling her that "I will switch to an LA mobile. I think that makes more sense." (*See* Gilman Dec. ¶ 27.) On August 1, 2008, he sent an e-mail to Starwood benefits personnel asking them to send his medical benefits information "to my new home address" in Pacific Palisades, California. (*Id*. at ¶ 24.)

- Lalvani makes much of the fact that, *after* this lawsuit was filed, he formed his own consulting business, and chose to organize it as a limited liability company under laws of the State of New York. (Lalvani Aff. ¶ 23) Although not stated in Lalvani's affidavit, in doing so Lalvani provided the New York Department of State with his "personal address" in Pacific Palisades, California. (*See* Gilman Dec. ¶ 26.)

Together with Lalvani's California birth domicile, his California residence at the time the action was commenced, his sworn statements to California voting officials that his "domicile" was in California, and his continuous holding and renewing of a California driver's

-23-

license, these facts require denial of Defendants' motion to dismiss at this stage of proceedings. The mere fact that Lalvani now claims an unspecified desire to return to New York is of little probative value. *See*, *e.g*., *Galu* v. *Attias*, 923 F. Supp. 590, 596 (S.D.N.Y. 1996) ("[A]n eventual desire to return is insufficient to overcome the undisputed evidence that she was domiciled in France at the time of filing the complaint."). Although Starwood has met any burden it has as to Lalvani's domicile by a preponderance of the evidence, Lalvani cannot carry his burden by clear and convincing evidence by tendering a self-serving affidavit that conflicts with his prior sworn statement of his California domicile, when, at the same time, he, his co-defendants, and all of their current and former confederates refuse to provide discovery. Before Lalvani may be heard to claim a change in domicile from California to New York, he should be required to submit to discovery and the Court should hold an evidentiary hearing. *See Leveraged Leasing Administration Corp.* v. *Pacificorp Capital, Inc*., 87 F.3d 44, 47 (2d Cir. 1996) (evidentiary hearing is "required" where affidavit of citizenship is contested); *Reynolds*, 332 F. Supp. 2d at 656-57 (conducting evidentiary hearing as to citizenship).

## IV.    Defendants' Request for Arbitration is Without Merit

Finally, Defendants suggest they have a right to arbitration of Starwood's First, Third and Fourth Claims for Relief based on Klein's Separation Agreement. Again, their argument is without merit.

Hilton and Lalvani are not parties to Klein's Separation Agreement with Starwood, and Starwood is not party to any agreement with either Hilton or Lalvani requiring arbitration of any of the claims alleged in Starwood's Complaint. Defendants do not assert otherwise.

Starwood's First and Third Claims for Relief relate to breach of the confidentiality and non-disclosure provisions of Klein's Non-Solicitation, Confidentiality and Intellectual Property Agreement with Starwood. *See* Complaint ¶¶ 218-26, 233-41. That agreement explic-

-24-

itly *excludes* from arbitration "any Claims to the extent they involve the alleged taking, use or disclosure of trade secrets and similar confidential or proprietary information," and does not compel arbitration of Starwood's claims. *See* Complaint ¶ 146 & Ex. 1 at p. 6. "'Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well.'" *Hartford Accident & Indemnification Co.* v. *Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (citation omitted); *New York* v. *Oneida Indian Nation*, 90 F.3d 58, 59 (2d Cir. 1996) (holding that "the State's claim in this case is not subject to mandatory arbitration because the parties specifically excluded it from the general arbitration clause"). That agreement does not require arbitration of any of the claims alleged in Starwood's Complaint.

Starwood's Fourth Claim for Relief is for fraud, and relates to false representations made by Klein to Starwood at the time of his separation. *See* Complaint ¶¶ 242-51. Klein's Separation Agreement does not require arbitration of the claim alleged. *See id.* ¶ 166 & Ex. 3 at page 3 (terminating all prior agreements "[e]xcept" the foregoing confidentiality and non-disclosure agreement, claims concerning which are excluded from arbitration).

-25-

## **CONCLUSION**

Defendants' motion to dismiss should be denied.

Dated: March 12, 2010                    CAHILL GORDON & REINDEL LLP

By: _____
Charles A. Gilman
David G. Januszewski
Andrea R. Butler
80 Pine Street
New York, New York 10005
(212) 701-3000

Attorneys for Plaintiff Starwood Hotels & Resorts
Worldwide, Inc.